S90A1570. LeCRAW et al. v. LeCRAW et al.
(401 SE2d 697)

BENHAM, Justice.

Appellant/executors of the estate of Julia Adams LeCraw sought judicial direction in the administration of the estate, and a declaratory judgment concerning a power of attorney executed by Mrs. LeCraw in which she appointed her three sons as her attorneys-in-fact. Pursuant to the power of attorney, the three sons made monetary gifts on Mrs. LeCraw's behalf to her children and their spouses, her grandchildren, and several close friends during the 13-month period between their appointment and Mrs. LeCraw's death. This appeal follows the trial court's ruling that the power of attorney authorized the sons to make the gifts.[1]

Through the power of attorney, Mrs. LeCraw authorized her attorneys-in-fact to, among other things,

> make deposits to and to make withdrawals from any accounts [she] might now or hereafter have with banks . . . including but not limited to checking accounts, savings accounts . . .

and

> To do any other thing or perform any other act, not limited to the foregoing, which I might do in person, it being intended that this shall be a general power of attorney.

---

[1] After an audit of the federal estate tax return, the Internal Revenue Service took the position that the power of attorney did not authorize the sons to make the gifts and that the $650,000 so distributed was part of Mrs. LeCraw's estate. This precipitated the executors and attorneys-in-fact to seek direction and a declaratory judgment.

The trial court found that, by making the gifts, the attorneys-in-fact were continuing Mrs. LeCraw's pattern of gifts to the recipients and were taking sound steps to minimize the transfer tax liability on Mrs. LeCraw's estate.[2] The trial court also found that Mrs. LeCraw was informed by her administrative assistant of the pending gifts while the checks were being prepared by the assistant, that Mrs. LeCraw voiced no objection, and that she accepted the thanks of several of the gift recipients. In addition, the trial court found that Mrs. LeCraw was competent to and did review her business affairs on a daily basis, and that she understood estate and gift tax planning, having consulted with legal counsel on such matters. After acknowledging the dearth of Georgia authority on the matter, the trial court determined that the power of attorney executed by Mrs. LeCraw authorized the gifts made by the attorneys-in-fact. We agree.

> "[A] formal power of attorney is subject to a strict construction," and "general terms in it are restricted to consistency with the controlling purpose, and will not extend the authority so as to add new and distinct powers different from the special powers expressly delegated" [cits.], yet . . . "the agent's authority shall be construed to include all necessary and usual means for effectually executing it." [*Johnson v. Johnson*, 184 Ga. 783 (193 SE 345) (1937).]

In addition, ascertainment of the intent of the parties plays an important role in the construction of a power of attorney, as it does in construing any contract. *Flake v. Fulton Nat. Bank of Atlanta*, 146 Ga. App. 40, 42 (245 SE2d 330) (1978). Where, as here, the grantor of the power of attorney expresses in that document the desires that her business be transacted by her attorneys-in-fact and that the power of attorney be a general power, and the evidence is undisputed that the actions taken by the attorneys-in-fact, unobjected to by the grantor, continue the grantor's practice of giving monetary gifts to the natural objects of her bounty and affection; that the exercise of the power to make gratuitous transfers by the attorneys-in-fact does not deplete the grantor of the assets necessary for her to live her accustomed lifestyle; and that the exercise of the power to make gifts to the natural objects of her bounty minimizes the estate transfer tax, a goal the grantor desired, we construe the general power of attorney executed by the grantor to include within it the power to make gratuitous transfers of property to the natural objects of the grantor's bounty.

Citing *Harrison v. Harrison*, 214 Ga. 393 (105 SE2d 214) (1958);

---

[2] Mrs. LeCraw left an estate in excess of $1,000,000, which estate did not include the gifts currently in dispute.

*Thompson v. Thompson*, 190 Ga. 264 (9 SE2d 80) (1940); *State Hwy. Bd. v. Price*, 174 Ga. 143 (162 SE 283) (1932); and *Taylor v. Phillips*, 147 Ga. 761 (95 SE 289) (1918), appellants assert that this court has ruled that Georgia law prohibits attorneys-in-fact from making gifts of the grantor's property *under any circumstances*. None of those cases contains such a holding. The ruling in each case was based on its facts, and none of the cases involving gratuitous transfers had, as we have here, evidence of the grantor's history for gift-giving; of the grantor's awareness of and apparent acquiescence to the gift-giving; and that the recipients of the gifts were the natural objects of the grantor's bounty. Therefore, none of those cases controls here.

*Judgment affirmed. All the Justices concur, except Weltner, Hunt and Fletcher, JJ., who dissent.*

FLETCHER, Justice, dissenting.

The major problem with this case is that the plaintiffs, who are also defendants, exercised a power of attorney to give themselves money belonging to their principal. As executors of their deceased mother's estate, C. Veazey LeCraw, C. Buck LeCraw, and Julian Le-Craw brought the present action seeking a declaratory judgment and certain equitable relief against C. Veazey LeCraw, C. Buck LeCraw, and Julian LeCraw, individually, as well as 38 other individuals.[3]

During her lifetime, the decedent executed at least two identical formal powers of attorney naming appellants as her attorneys-in-fact. One of these powers of attorney is dated March 27, 1980 and it is the 1980 power of attorney which is referred to in the complaint and is attached thereto as an exhibit. The other power of attorney is dated May 8, 1985 and it is the 1985 power of attorney which was introduced into evidence at the hearing below.

While entitled "general power of attorney," the document is a detailed three-page instrument containing six paragraphs of specific and detailed powers granted by the decedent, followed by a paragraph containing the following standard general language:

> To do any other thing or perform any other act, not limited to the foregoing, which I might do in person, it being intended that this shall be a general power of attorney.

---

[3] Another problem with this action is the total conflict of interest presented by the appellant/executors, in their representative fiduciary capacity, bringing an action against themselves in their individual capacity as beneficiaries of "gifts" made by them and to them while they acted in their fiduciary capacity as their mother's attorneys-in-fact. In the absence of true adverse parties, there is no justiciable controversy before the court. *Pilgrim v. First Nat. Bank of Rome*, 235 Ga. 172 (219 SE2d 135) (1975); *Cook v. Sikes*, 210 Ga. 722 (82 SE2d 641) (1954).

The record does not reflect any acts being performed by the attorneys-in-fact under the 1980 instrument and reflects no acts performed under the May 1985 instrument until approximately four months prior to grantor/principal's death on April 23, 1986.

The trial court heard testimony from only two persons: C. Veazey LeCraw, an executor and attorney-in-fact, as well as a family employee who, along with her husband, received some of the gifts made under the power of attorney. Their testimony establishes that in a period of approximately one week, from late December of 1985 to early January of 1986, gifts totalling $650,000 were made under the power of attorney. The gifts were made to approximately 40 persons and were made by checks prepared by the family employee who testified at the hearing. The checks were drawn on the account of the principal/decedent, were signed by C. Veazey LeCraw and were each in the amount of $10,000. Although the actual checks were not placed in evidence, both the complaint and the testimony reflect that all of the checks were gifts and that among these gifts were gifts to the attorneys-in-fact individually, to their respective spouses, and to their respective children.

The powers of attorney did not specifically authorize gifts of the principal's property[4] and made no reference to estate planning. However, in an effort to show a pattern of gifts by the principal, appellants placed in evidence a series of 252 checks, signed by the principal and made payable to various family members. The checks begin with dates of December 16, 1978 and go on through May 5, 1985. The checks total approximately $30,000. There is one check for $10,000, one for $5,000, one for $1,000, two for $500 and there are 12 checks for over $100 but less than $500. The remaining 235 checks are all for $100 or less.

1. Appellants were attorneys-in-fact for their deceased mother and, as such, were her agents. Agents are fiduciaries, obligated to act primarily for the benefit of their principal in matters connected with the agency. In describing the fiduciary duty of an attorney-in-fact to his principal in *First National Bank of Paulding County v. Cooper*, 252 Ga. 215, 216 (312 SE2d 607) (1984), we quoted the following language from *Franco v. Stein Steel &c. Co.*, 227 Ga. 92, 95 (179 SE2d 88) (1970):

> The first duty of an agent is that of loyalty to his trust. . . . He cannot have any interest or do any act adverse to the interest of his principal, or which is incompatible with the

---

[4] When asked if the power of attorney expressly conferred on him the power to make gifts on behalf of his mother, C. Veazey LeCraw responded: "it didn't say specifically gifts . . . ."

application of his skill and diligence to the promotion of that interest. He cannot place himself in a position in which his duty and interest conflict with that of his principal, or be permitted to make a secret profit out of his agency.

OCGA §§ 10-6-25 and 10-6-24 flesh out the fiduciary aspect of the relationship and provide, respectively:

The agent shall not make a personal profit from his principal's property; for all such he is bound to account.

Without the express consent of the principal after a full knowledge of all the facts, an agent employed to sell may not himself be the purchaser; and an agent to buy may not himself be the seller.

Here, appellants did personally profit from their principal's property by making gifts of that property to themselves and to their families. Additionally, if an agent may not sell the principal's property without the principal's express consent, surely the agent may not give the property away without the principal's express consent. Yet, in the present case, appellants did give their principal's property away without her express consent and without a specific authorization in the power of attorney to even make gifts of her property at all. In the present case, appellants clearly breached their fiduciary obligations as attorneys-in-fact.

.2. Georgia law has long been that a formal power of attorney is to be strictly construed and construed in light of the four corners of the instrument. In *Claflin & Co. v. Continental Jersey Works*, 85 Ga. 27, 38-39 (11 SE 721) (1890), this court held that:

The very purpose of a power of attorney is to prescribe and publish the limits within which the agent shall act, so as not to leave him to the uncertainty of memory, and those who deal with him to the risk of misrepresentation or misconception as to the extent of his authority. *To confer express authority is to withhold implied authority. There can be no parol enlargement of a written authority.* [Emphasis supplied.]

The powers of attorney involved here contain no authorization for the attorneys-in-fact to make gifts of the principal's property or to engage in estate planning on her behalf. If such authority were intended by the principal here, that intent can be found only by going outside of the instrument itself to try and determine if the principal meant something other than what she said. However, as this court has

previously held, "[i]t is not allowable, by the adduction of extrinsic oral evidence, to add to the powers expressly given in the writing. The authority must be proved by the instrument itself." *Claflin*, 85 Ga., supra at 38.

For the reasons set forth above, I dissent. I am authorized to state that Justice Weltner and Justice Hunt join in this dissent.

DECIDED MARCH 13, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*Lefkoff, Duncan, Grimes & Dermer, Joseph Lefkoff, Douglas W. Duncan,* for appellants.

*Simmons, Warren & Szczecko, M. T. Simmons, Jr., James E. Spence, Jr.,* for appellees.