Elizabeth J. Rankey appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which overruled in part her exceptions to the inventory filed in the estate of John E. Case ("Case").
The facts and procedural history are as follows.
John and Rowena Case moved to Dayton from Arizona in 1993. Rankey, the couple's niece, lived in Dayton and agreed to assist them in their daily activities, including transportation to doctors' appointments and the grocery store and bill paying. The Cases' good friend, William Day, also lived in Dayton and visited the couple numerous times each week. Day served as the couple's personal and financial advisor. The Cases established bank accounts at Bank One.
In January 1994, Mrs. Case was diagnosed with terminal cancer. Day suggested to the Cases that they execute a power of attorney and that they include Rankey's name on one of their bank accounts to simplify the handling of their affairs. On January 24, 1994, the Cases established savings account number 8000134240 at the National Bank of Detroit ("NBD"). The account was titled in the names of "Case, John E. or Rowena B. Case or Rankey, Elizabeth J.," and the signature card was signed by each of the Cases and by Rankey. The signatures acknowledged the receipt of NBD's Terms and Conditions brochure governing the account, which stipulated that all joint accounts provided for survivorship rights unless otherwise requested. Account number 8000134240 was funded by a $20,000 cashier's check from Bank One purchased by the Cases.
Mrs. Case died on February 8, 1994. On February 11, Case executed a power of attorney in favor of Rankey. Rankey continued to assist Case in his financial affairs, including bill paying. In November 1994, she opened a second account at NBD, account number 4200100552, that was both a checking and a savings account. The signature card for the account was signed by Case and by Rankey in her individual capacity; the power of attorney was not employed in the creation of this account. The signatures again acknowledged the receipt of the Terms and Conditions brochure which designated that the account was a joint and survivorship account. On the same day, the funds on deposit in account number 8000134240, totaling $26,897.88, were transferred to the new account, and account number 8000134240 was closed. Rankey deposited additional funds into account number 4200100552 from sources including Case's Bank One accounts and his retirement income.
On February 2, 1995, Rankey established NBD account number 49594369, a certificate of deposit ("CD"), by transferring $35,000 from account number 4200100552. This account was established in the names of "John E. Case or Elizabeth Rankey" and was a joint and survivorship account. The signature card was signed by Rankey, individually and as Case's attorney-in-fact.
Case died testate in March 1995. His will appointed Rankey and Lorelei Clapper to administer his estate. Rankey and Clapper, however, were unable to agree on the inventory of estate assets. Their dispute centered on the treatment of the joint and survivorship accounts. As a result, Harry G. Beyoglides, Jr. was appointed to administer the estate. Beyoglides filed an inventory that included the funds in NBD accounts 4200100552 and 49594369 in Case's estate. The inventory included assets totaling $75,540.48, of which $66,230.07 was attributable to the NBD accounts. Rankey filed exceptions to the inventory contending that the NBD accounts should not have been included because they were joint and survivorship accounts.
The trial court conducted a hearing on April 14, 1997. Day and attorney Daniel H. McKnight, who had drafted Case's power of attorney, testified on Rankey's behalf. Day and McKnight testified that Case had fully understood the power of attorney that he executed in favor of Rankey. Day further testified that he had suggested a joint account in the names of the Cases and Rankey for managing the Cases' affairs and had heard the Cases instruct Rankey to write a $20,000 check from Bank One to open the first joint account. Day could not recall whether he had been present at a conversation between Case and Rankey about opening a CD.
Rankey also testified on her own behalf. She stated that all of the transfers from Bank One accounts to NBD accounts and among the NBD accounts had been made pursuant to Case's instructions and with his approval. She also said that she had withdrawn $3,750 and had given it to her husband as a gift from Case at Case's request "for all he had done for him." Rankey testified that after the first joint and survivorship account had been established, Mrs. Case had said to her, "You win," but that Rankey had not understood what the comment meant. Rankey testified that she had not understood the nature of the survivorship accounts until after Case's death when McKnight had told her that she was entitled to keep the funds in the joint accounts. McKnight corroborated that Rankey had been "shocked" by this information.
Beyoglides did not call any witnesses on behalf of the estate.
The trial court found that the NBD accounts had been properly included in the inventory of estate assets but that the sum of $26,897.88, representing the ending balance of NBD account number 8000134240, ought to be excluded because that account had been "a jointly held rights of survivorship account used to begin NBD savings and checking accounts numbered 4200100552." The trial court implicitly rejected Rankey's claimed right to a survivorship interest in any other monies.
Rankey asserts one assignment of error on appeal.
 THE TRIAL COURT'S FINDING THAT $35,000.00 WAS AN ASSET OF THE ESTATE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
Rankey contends that the trial court erred in including any of the funds in the joint and survivorship accounts in Case's estate.
Rankey relies upon Wright v. Bloom (1994), 69 Ohio St.3d 596, in support of her position that she was entitled to the funds in the joint and survivorship accounts upon Case's death. Wright
addressed whether survivorship rights included in a contract for a joint and survivorship account could be defeated by evidence extrinsic to the account contract that the depositor had not intended to create a survivorship interest in the account. The supreme court held that "survivorship rights under a joint and survivorship account * * * to the sums remaining on deposit at the death of the depositor may not be defeated by extrinsic evidence that the decedent did not intend to create in [the] surviving party or parties a present interest in the account." Id. at 603. The court established a rebuttable presumption in favor of the surviving party or parties. Id. at 605. "The opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death." Id., paragraph two of the syllabus.
Rankey contends that, pursuant to Wright, she was entitled to the funds in the joint and survivorship accounts. We agree with this position to an extent. Case signed an NBD Signature Card for Personal Accounts for account numbers 8000134240 and 4200100552, indicating that he had received and agreed to the terms and conditions governing the account as set forth in NBD's Terms and Conditions brochure. The brochure stated that all personal checking and savings accounts in the name of two or more persons as joint owners were joint accounts with rights of survivorship unless another form of joint account was requested. No evidence was presented that Rankey had exerted undue influence on Case in opening these accounts or that he had lacked the capacity to understand and agree to the survivorship terms stated in NBD's brochure. Thus, the presumption set forth in Wright applies, and Case's creation of the joint and survivorship accounts must be treated as conclusive evidence of his intention to transfer the balances remaining in the accounts to Rankey at his death.
In this case, however, where additional funds were transferred into the accounts under a power of attorney, we hold that the Wright presumption applies only to those funds that Case knew to be in the survivorship accounts. The presumption does not apply to additional funds that Rankey, as an attorney-in-fact who was also the beneficiary of the survivorship accounts, transferred into the survivorship accounts, unless the propriety of such transfers can withstand exacting scrutiny.
A fiduciary relationship such as Case and Rankin's is one in which special confidence and trust is placed in the integrity and fidelity of another, who acquires a resulting position of superiority or influence by virtue of this special trust. Stonev. Davis (1981), 66 Ohio St.2d 74, 78. The person who occupies a fiduciary relationship to another acts as an agent for the other and owes him the utmost loyalty and honesty. Testa v. Roberts
(1988), 44 Ohio App.3d 161, 165.
In a fiduciary relationship, the person who holds the power bears the burden of proof on the fairness of a transaction between the agent and the principal. Id. at 166; In re Scott (1996),111 Ohio App.3d 273, 276. In particular, in cases where a fiduciary relationship exists between the creator of a joint and survivorship account and a survivor beneficiary, there is suspicion that the transaction resulted from undue influence, and a presumption of undue influence arises. Studniewski v.Krzyzanowski (1989), 65 Ohio App.3d 628, 632; Scott, supra; Rae v.Geier (Sept. 20, 1996), Darke App. No. 1393, unreported. Once this presumption arises, the burden of going forward with evidence shifts to the beneficiary to show that his conduct has been free of undue influence or fraud. Studniewski, supra, at 632. The beneficiary "`has little leave to complain if the finder of fact chooses not to believe some or all of his proofs.'" Scott, supra, at 276. The beneficiary must rebut the presumption by a preponderance of the evidence. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 63.
Rankey claims that she rebutted the presumption of undue influence by offering the testimony of McKnight and Day that Case had understood the nature of his accounts and that he was not susceptible to undue influence. Our review of the testimony reveals that these witnesses did, in fact, rebut the presumption of undue influence in regard to the creation of the bank accounts as joint and survivorship accounts. Their testimony, however, did not address whether Case had known of the extent to which funds from the Bank One account, of which Rankey was not an owner, or from other sources had been transferred into the joint and survivorship accounts. Thus, Rankey did not rebut the presumption of impropriety involving the transfer of monies from accounts in which she had had no interest to accounts in which she had a survivorship interest except by her own testimony.
The trial court was in the best position to judge Rankey's credibility and to determine whether her testimony carried sufficient weight to rebut the presumption of impropriety in her transactions. Gardini v. Moyer (1991), 61 Ohio St.3d 479, 484. The trial court could have reasonably disbelieved Rankey's testimony that Case had known about substantial amounts of his money being transferred into joint and survivorship accounts — over and above those funds used to open the accounts — and concluded that Case had not intended to give Rankey a survivorship interest in those funds. Likewise, the trial court could have reasonably found Rankey's testimony insufficient to overcome the presumption of impropriety, even though it was not directly contradicted by other witnesses. As such, the trial court's determination that Rankey was entitled to only those jointly held assets about which Case's knowledge had been established, and that the balance of the assets should be included in the estate, was supported by the evidence.
Moreover, although Rankey claimed that she was unaware of the survivorship nature of the NBD accounts, the transfer of Case's money into accounts in which she held a survivorship interest was, in essence, a gift to herself. Rankey contends that she was empowered to make such a gift because, in addition to specifically enumerated powers, the power of attorney gave her the "full power and authority to do and perform all and every act * * * as fully and effectually to all intents and purposes as [Case] might or could do in [his] own proper person if personally present * * *, the above specifically enumerated powers being in aid and exemplification of the full, complete and general power herein granted and not in limitation or definition thereof." Rankey contends that this power extended to "the adjustment of all accounts, legacies and bequests due, owing or to be paid by him."
When a power of attorney confers some specifically enumerated powers, but does not specifically grant the power to make gifts of the principal's property, and it also contains a general clause demonstrating an intent that the attorney-in-fact stand in the principal's shoes, the extent to which the attorney-in-fact may make gifts of the principal's assets has been the subject of much dispute. See Testa, supra; Scott, supra. See, also, Estate ofCasey v. Commr. (C.A.4, 1991), 948 F.2d 895; LeCraw v. LeCraw (Ga. 1991), 401 S.E.2d 697; Estate of Gagliardi v. Commr. (1989),89 T.C. 1207. Under the law of agency, any powers that are not expressly conferred generally will not be implied. Restatement of the Law 2d, Agency, (1958) 122, Section 34, comment h. In the common law of agency, however, it is presumed that the principal has sufficient capacity to direct the acts of the attorney-in-fact. Id., Section 7, 28-29. If a power of attorney is executed in anticipation of the principal's incapacity, this presumption may not apply. Where the state legislature has not clarified the requirements of a power of attorney regarding gift giving authority, courts must determine whether to interpret the power of attorney narrowly, according to the powers conferred on its face, or to consider extrinsic evidence of the donor's intent. See, generally, Note, The Federal Tax Problems Posed by Durable Powers of Attorney Which Are Ambiguous as to the Agent's Authority to Make Gifts (1995), 22 N. KY. L. REV. 891. The recipient of aninter vivos gift must prove by clear and convincing evidence that a gift was made. In re Fife's Estate (1956), 164 Ohio St. 449,456.
The Supreme Court of Ohio has not addressed the issue of gift giving powers under a general power of attorney. In Testa v.Roberts, supra, however, the Sixth Appellate District considered extrinsic evidence in invalidating gifts made to the attorney-in-fact and other family members under a general power of attorney that was silent as to the authority to make gifts. Although the court did not foreclose the possibility that gift giving authority could be inferred under some circumstances, it refused to infer such authority under the facts of that case, where the gifts contravened the decedent's wishes as expressed in her will and were not consistent with any lifetime estate planning strategy. Moreover, the court found that the decedent in Testa
had not been competent when the power of attorney was executed. Although this case is not on all fours with Testa, we find Testa
to be instructive as to the consideration of extrinsic evidence and the factors to be considered in assessing the existence of gift giving authority.
Rankey presented extrinsic evidence, i.e., her own testimony, that Case had intended to transfer his assets into joint and survivorship accounts. The trial court could have properly considered this evidence in evaluating Rankin's purported gift giving authority. As discussed, supra, the trial court could have reasonably found that Rankey's testimony was insufficient to establish her authority to make gifts or to overcome the presumption of impropriety arising from the fiduciary nature of the parties' relationship.
Furthermore, the trial court had before it Case's will. (This appeal is taken in Case No. 309809, which was opened when Beyoglides replaced Clapper and Rankey as administrator. Case's will is part of the record in Case No. 304034, compiled prior to Beyoglides' replacement of Clapper and Rankey.) Relying on the will as extrinsic evidence of Case's intent, the trial court could have reasonably concluded that allowing Rankey to retain all of the assets located in the joint and survivorship accounts would have been inconsistent with Case's testamentary intent. The will provided that Case's assets were to be divided into six equal shares, with Rankey inheriting only one share. The total assets of the estate, as stated on Beyoglides' inventory, amounted to $75,540.48. The disputed accounts contained $66,230.07. We find it difficult to reconcile Rankey's position — that Case intended for her to retain $66,230.07 while the remaining beneficiaries shared $9,310.41 — with the intentions expressed in Case's will. Pursuant to Testa, supra, gift giving under a power of attorney that undermines the principal's intent as expressed in his will is a factor weighing in favor of invalidating such gifts. Thus, the trial court's decision to exclude $26,897.88 from the estate, an amount attributable to funds Case knew to be in a joint and survivorship account, but to include the other funds in the joint and survivorship accounts at the time of Case's death, was not an abuse of discretion.
Rankey contends that the funds in the CD should not have been included in the estate because her use of the power of attorney in opening the CD was "de minimis." Rankey claims that the joint and survivorship nature of the CD was insignificant because she had possessed a survivorship interest in the funds used to purchase the CD. In other words, Rankey argues that, in creating the CD, she simply took funds that were already hers and put them into a different type of account, and that to find any impropriety in such a transfer would be "nonsensical."
Rankey used funds from NBD account number 4200100552 to purchase the CD, and she did have a joint and survivorship interest in that account. Her argument, however, that by virtue of her identical interest in these funds, the CD should have been excluded from the estate, ignores the fact that a significant portion of the funds in account number 4200100552 was transferred to that account by Rankey, using the power of attorney, from Bank One accounts or other sources in which she did not have a survivorship interest. Because the trial court could have reasonably concluded that Case had not known of the extent to which his assets had been transferred into joint and survivorship accounts, the trial court also could have reasonably concluded that Rankey was not entitled to retain the CD purchased with those assets.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
YOUNG, P.J. and BROGAN, J., concur.
Copies mailed to:
Harry Beyoglides, Jr.
Joseph W. Walker
Hon. George J. Gounaris