## A99A2251. STEWART et al. v. STEWART.
(524 SE2d 267)

McMurray, Presiding Judge.

Appellants-plaintiffs (collectively the "plaintiffs") Richard Stewart, M.D., and Beth Stewart Messina, formerly Beth Stewart Crichlow, individually and as assignees of W. Seaborn Ashley, Jr., executor of the estates of Cora Williams Stewart ("Mrs. Stewart") and Frances Stewart Core, appeal the joint judgment entered upon the jury's verdict in the underlying action for damages against appellee-defendant John B. Stewart, Jr. ("defendant").

In July 1991, Mrs. Stewart and her stepdaughter, Core, executed general powers of attorney in favor of defendant to enable him to manage their assets and to provide for their needs as they grew older.

Approximately four months earlier, acting under a power of attorney given her by her stepdaughter following a stroke in the mid-1980s, Mrs. Stewart had invested the proceeds from the sale of certain real property she owned jointly with her stepdaughter in subordinated debentures issued by defendant's wholly owned company, Stewart Finance Company, Inc. As she had done with nearly $250,000 in other cash assets since the 1970s, Mrs. Stewart designated the defendant as co-owner of the subordinated debentures with right of survivorship.

Core died in 1992. After Mrs. Stewart was admitted to a nursing home a year later, defendant, under the power of attorney she had given him, opened a joint Merrill Lynch account in their names. Therein he deposited the stock which Mrs. Stewart owned individually, sold the same and made personal investments with the proceeds in the amount of $228,247.25. Later in 1993, the defendant, again acting pursuant to the power of attorney Mrs. Stewart had given him, "cancelled" the subordinated debentures he held jointly with Mrs. Stewart, crediting them to the capital account of his finance company in the amount of $244,782.64. Other undisputed evidence showed that defendant, as Mrs. Stewart's attorney-in-fact, used certain certificates of deposit owned jointly with Mrs. Stewart as collateral for personal and company loans.

Mrs. Stewart died in 1996. In April 1997, plaintiffs brought the underlying action individually and as assignees of the estates of Mrs. Stewart and Core seeking an accounting and recovery of funds in defendant's name by right of survivorship, alleging fraud, conversion, and breach of fiduciary duty. The trial court denied defendant's pretrial motion for partial summary judgment as to plaintiffs' claims on behalf of the Core estate for want of standing to pursue an accounting of defendant's use of Core's money as non-beneficiaries under the Core will. At trial in January 1999, defendant moved to dismiss plaintiffs' claims on behalf of the Core estate upon the grounds urged by his motion for partial summary judgment. The trial court, with substituted judge presiding, dismissed such claim without prejudice. The jury determined that the asset transfers made to himself personally as Mrs. Stewart's attorney-in-fact were proper. Fundamentally at issue in this case is whether Mrs. Stewart intended the actions of her attorney-in-fact, the defendant. *Held*:

1. Plaintiffs contend the trial court erred in denying their motions for directed verdict, judgment notwithstanding the verdict ("j.n.o.v."), and motion for new trial. In their motions for directed verdict and j.n.o.v., plaintiffs argue that defendant breached his duty of loyalty to Mrs. Stewart under the power of attorney she had given him by: (a) cancelling their jointly held subordinated debentures and crediting the value thereof to his company's capital account, and (b)

making personal investments using the proceeds derived from the sale of her stocks which he deposited in a joint Merrill Lynch account. Plaintiffs make the same argument in support of their motion for new trial upon the general grounds. Our decision in the case sub judice is controlled by the binding authority of *LeCraw v. LeCraw*, 261 Ga. 98 (401 SE2d 697), and *Jordan v. Stephens*, 221 Ga. App. 8 (470 SE2d 733), and we must affirm.

In Georgia,

> "sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." OCGA § 7-1-813 (a). See also *Godwin v. Johnson,* 197 Ga. App. 829, 830 (1) (399 SE2d 581) (1990) (OCGA § 7-1-813 (a) applied equally to certificates of deposit).

*Jordan v. Stephens*, 221 Ga. App. at 8-9 (1), supra. Moreover, while a power of attorney creates a fiduciary relationship requiring a duty of loyalty to the principal, such duty does not foreclose making gifts of the principal's property: (a) in the absence of fraud in obtaining the power of attorney, (b) the power of attorney expressly confers the right to transfer stocks, and (c) the evidence indicates that the principal indicates the intent that transfer should occur. Id., citing *Wheeless v. Gelzer*, 780 FSupp. 1373 (N.D. Ga. 1991). See also *LeCraw v. LeCraw*, 261 Ga. at 99, supra. There is no evidence that the instant power of attorney was obtained by fraud. The power of attorney expressly authorized defendant to transfer stocks, and there was evidence that Mrs. Stewart consented to the transfers complained of after conferring with the defendant.

That Mrs. Stewart gave her consent knowingly is also supported by other evidence. While Mrs. Stewart's attending physician and defendant's wife acknowledged that Mrs. Stewart had uncommunicative days after entering the nursing home in 1993 at the age of 98, both agreed that she was fully rational and alert on other days.[1] The social director at the nursing home agreed. Moreover, there was no dispute at trial as to Mrs. Stewart's mental status at the time she made defendant her attorney-in-fact in 1991. In this regard, defendant testified that apart from ensuring that Mrs. Stewart and her stepdaughter were fully cared for throughout the remainder of their

---

[1] Mrs. Stewart's doctor referred to clinical notes he had made in 1993 indicating that she talked rationally in July 1993 and "very intelligently" a month later. Defendant's wife indicated that she could be "clear as a bell" on some days and that she always seemed to know her until the last month of her life.

lives, Mrs. Stewart placed no restriction on his use of their jointly owned funds and intended that he should have whatever remained at her death. There is no claim that the defendant failed to provide the care that this agreement required of him.

The standard of review of the trial court's denial of plaintiffs' motions for directed verdict and j.n.o.v. is the any evidence standard. *Horton v. City of Macon*, 144 Ga. App. 380, 382 (2) (241 SE2d 311). The any evidence standard is also applicable to our review of plaintiffs' motion for new trial. *Howard v. Rivers*, 266 Ga. 185 (1) (465 SE2d 666); *Burnet v. Bazemore*, 122 Ga. App. 73, 74 (176 SE2d 184). We conclude that there is evidence that Mrs. Stewart intended that the defendant should receive the gifts which resulted from defendant's transfer of their subordinated debentures and the sale of stock she owned individually. Accordingly, the trial court properly denied plaintiffs' motions for directed verdict, for j.n.o.v., and for new trial thereon.

2. Plaintiffs also contend that the trial court erred in denying their motion in limine to foreclose the introduction of evidence of Mrs. Stewart's intent as it related to defendant's authority to manage her financial affairs on her behalf. In this regard, plaintiffs argue that defendant's testimony concerning his longtime relationship with Mrs. Stewart and the manner in which he managed her financial affairs before and after he was given her power of attorney was improper as seeking to expand his authority under the general power of attorney Mrs. Stewart gave him. We disagree.

In this case, as in *Jordan v. Stephens*, 221 Ga. App. at 9 (1), supra, the primary issue for consideration was Mrs. Stewart's intent as to defendant when he established the joint accounts. OCGA § 7-1-813 (a). See also *LeCraw v. LeCraw*, 261 Ga. at 99, supra. This was a jury question. *Godwin v. Johnson*, 197 Ga. App. at 831 (1), supra. See *White v. White*, 262 Ga. 168 (415 SE2d 467) ("Hearsay evidence is admitted only in specified cases from necessity." OCGA § 24-3-1 (b)). Consequently, the trial court properly denied plaintiffs' motion in limine as to evidence of Mrs. Stewart's intent.

3. Plaintiffs next enumerate that the trial court erred in denying their motion to excuse two jurors for cause.

After plaintiffs' counsel moved to disqualify the jurors, the trial court asked the following question of the jurors:

> Ms. Turner and Mr. Brock, at the beginning of this trial, you all took an oath, as everyone else did in the room, to be fair and impartial. And you've indicated in your answers that you have a relationship of some type with either a party or a witness in this case. And the question I have is this. Can you listen to the evidence that's produced and listen to the

instructions on the law that I give you at the end of the trial and live up to your oath, that is, be fair and impartial to both parties and reach a decision that speaks the truth[?] Do you think you can do that? I'll have to have a yes or no answer.

Both jurors responded, "Yes."

It is well settled that trial courts exercise broad discretion in qualifying jurors. *Hardy v. Tanner Med. Center*, 231 Ga. App. 254, 256 (4) (499 SE2d 121). On appeal, that discretion will not be disturbed in the absence of manifest abuse. *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 636 (I) (1) (b) (224 SE2d 739) (trial court refused to disqualify jurors whose families had been patients of that medical internist defendant). Moreover, the law presumes potential jurors to be fair and impartial. While this presumption is rebuttable, it is the objecting party's burden to do so. *Cohen v. Baxter*, 267 Ga. 422, 424 (2) (479 SE2d 746). After reviewing the record, we cannot say that plaintiffs met their burden of rebutting this presumption. The trial court, therefore, did not abuse its discretion in declining to remove jurors Turner and Brock.

4. There is no merit to plaintiffs' contention that the trial court erred in denying their motion for directed verdict as to plaintiffs' claims for damages arising from defendant's use of certificates of deposit owned jointly with Mrs. Stewart as collateral on loans made to Stewart Finance Company and to defendant personally. There was, however, no evidence that defendant's use of jointly owned certificates of deposit increased his company's capacity to obtain loans at the bank. In any event, defendant's testimony, corroborated by the bank president who loaned him money upon his pledge of the certificates of deposit in issue, was that no money used as collateral was ever lost or diminished in value.

> "Where a party makes a claim for a monetary sum . . . it is incumbent upon him to present evidence showing the amount of loss in a manner in which the jury can calculate the amount of loss with a reasonable degree of certainty. An allowance for damages cannot be based on guesswork."

*DeJong v. Stern*, 162 Ga. App. 529, 530 (1) (292 SE2d 115), citing *Tendrift Realty Co. v. Hayes*, 140 Ga. App. 896 (1) (232 SE2d 169); *Hip Pocket v. Levi Strauss & Co.*, 144 Ga. App. 792, 794 (242 SE2d 305).

Plaintiffs had the burden of showing that there was some diminution in the value of Mrs. Stewart's estate that would have caused injury to them as beneficiaries of her estate as a result of the use of her jointly owned certificates of deposit as collateral. That evidence

not having been offered, the trial court properly granted defendant's motion for directed verdict thereon.

5. Plaintiffs lastly enumerate that the trial court erred in dismissing without prejudice their claims as assignees of the estate of Frances Stewart Core.

Inasmuch as plaintiffs were neither beneficiaries nor creditors of Core's estate, they were not proper parties to assert any claims on behalf of the estate at the time these were assigned to them. OCGA § 53-7-104.[2] Neither were they proper parties at the time of trial. OCGA § 53-7-45.[3] Accordingly, the trial court properly dismissed plaintiffs' claims as assignees of Core's estate due to lack of standing. *Williams v. Theus*, 186 Ga. App. 401, 402 (367 SE2d 288).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED OCTOBER 29, 1999 — 

*Burnside, Wall, Daniel, Ellison & Revell, Thomas R. Burnside, Jr., H. Samuel Atkins, Jr.,* for appellants.

*Chambless, Higdon & Carson, Thomas F. Richardson, Kim H. Stroup, Peter J. Rice, Jr.,* for appellee.

---

[2] OCGA § 53-7-104, effective until January 1, 1998, provided:
If the administrator or executor, for any cause, shall decline to litigate any claim, *he may assign the claim to a distributee or creditor*, who may at his own expense prosecute the same. After the payment of expenses, any proceeds recovered shall be distributed by the administrator or executor.
(Emphasis supplied.)

[3] OCGA § 53-7-45, effective July 1, 1998, provides:
Personal representatives are authorized to compromise, adjust, arbitrate, assign, sue or defend, abandon, or otherwise deal with or settle debts or claims in favor of or against the estate. *A personal representative who declines to litigate any claim may assign the claim to a creditor or an heir of an intestate estate or a beneficiary of a testate estate* for the purpose of prosecuting the claim at that person's own expense and, after reimbursement of the expenses to the *creditor, heir, or beneficiary*, any remaining proceeds shall be paid over to the personal representative for administration.
(Emphasis supplied.)