KERN, Justice
(concurring in part and dissenting in part).
[¶ 21.] I agree with the majority opinion’s analysis with the exception of the Court’s holding that the exclusion of the will was proper under SDCL 15—6—8(c) as an affirmative defense not pled. On this point I respectfully dissent. It is not clear that Zoss sought to submit the will only for the purpose of proving an affirmative defense. Furthermore, South Dakota law provides that, notwithstanding SDCL 15-6-8(c), a defendant may amend his pleadings to include an affirmative defense even during trial. In my view, the circuit court abused its discretion in excluding Margaret’s will, which provided extrinsic, non-oral evidence of her intent, and the will should be admissible upon remand.
[¶ 22.] SDCL 15-6-8(c) requires that a party “set forth affirmatively ... any ... matter constituting an-avoidance or affirmative defense.” The statute provides a nonexclusive list of examples. Century 21 Associated Realty v. Hoffman, 503 N.W.2d 861, 865 (S.D.1993). At trial, Zoss’s attorney questioned Goldie as to whether rents unpaid by Zoss were debts owed to the estate in order to lay foundation for introduction of the will. Appellees’ brief cites this exchange and statements made during the offer of proof to demonstrate that Zoss sought to introduce the will as part of an affirmative defense. Because it was not affirmatively pled per SDCL 15-6-8(e), Appellees successfully argued and now the majority opinion holds that the defense was barred.
[¶23.] Zoss, however, argues that the will was not offered as a defense in and of itself. Rather, he asserts that the will provides non-oral, extrinsic evidence of Margaret’s intent in conferring to him a power of attorney. Indeed, -the clause in question would not serve as a shield for claims of breach of fiduciary duty. Article VIII, as interpreted by the circuit court, apparently forgave only debts owed to Margaret. Thus, while the provision may arguably. help Zoss bolster his claim to avoid payment of rents through 2012, a literal reading of its words alone would not discharge him of his fiduciary duties as attorney-in-fact. This is because only “the instrument creating the fiduciary duty” can authorize self-dealing under our holding in Bienash v. Moller, 2006 S.D. 78, ¶ 14, 721 N.W.2d 431, 435 (emphasis added). The legal utility of the will, then, is not in its power to release Zoss from his fiduciary duties on its own terms, but in that it provides context for Margaret’s intentions towards Zoss. Additionally, the breach of contract claim goes to the land then-owned by the sisters in .2013, making the will inapplicable to rents outstanding after 2012. It cannot be, then, that the will was being offered only as an affirmative defense.
[¶ 24.] But even if the will had been offered as such, this Court “recognize[s] ... [an] exception! ] to the rule that affirmative defenses not pled are waived” under SDCL 15-6-15(a). High Plains Genetics Research v. J K Mill-Iron Ranch, 535 N.W.2d 839, 845 (S.D.1995). SDCL 15-6-15(a) provides that a “party may amend his pleading ... by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.” Moreover, the “trial court may permit the amendment of pleadings before, during, and after trial without the adverse party’s consent.” Klutman v. Sioux Falls Storm, 2009 S.D. 55, ¶ 14, 769 N.W.2d 440, 446 (emphasis added).- “[T]he *70 most important consideration in determining whether a party should be allowed to amend a pleading is whether the nonmov-ing party will be prejudiced by the amendment.” Burhenn v. Dennis Supply Co., 2004 S.D. 91, ¶ 20, 685 N.W.2d 778, 783. “Prejudice is often shown when a party is surprised and unprepared to meet the contents of the proposed amendment.” Tesch v. Tesch, 399 N.W.2d 880, 882 (S.D.1987) (citing 61A Am.Jur.2d Pleading § 315). “A motion to amend is addressed to the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion which results in prejudice to the non-moving party.” Isakson v. Parris, 526 N.W.2d 733, 736 (S.D.1995) (denial of leave to amend to include a new affirmative defense held an abuse of discretion when no prejudice would have been suffered by plaintiff).
[¶25.] No prejudice to the Appellees would have resulted by amendment of the pleadings to include the will. Appellees, in objecting to the will’s introduction at trial, argued that the will would “confuse the jury,” and that they did not “believe that the second day of trial, most of the way through the defendant’s case, [was] the time for this issue to be raised and have the [c]ourt put in this position.” The circuit court agreed, denying Zoss’s request to admit the will, stating that it was an affirmative defense not pled. At a hearing held after, trial on Zoss’s motion for a new trial, the circuit court stated that exclusion of,the will was proper because “[i]t came at the last minute.” Yet the record establishes that the foundation for the exhibit was laid at the beginning of Zoss’s case in chief through his first witness Goldie Burnham. Zoss then proffered the will as an exhibit midway through his case.
[¶ 26.] Regardless, SDCL 15-6-15(a) provides that a party may amend the pleadings—even during trialr—if “justice so requires.” Timeliness is a consideration. But the overriding question is whether the nonmoving party would have been prejudiced by the amended complaint. Id. Under Federal Rules of Civil Procedure 15(a) and (b), upon which SDCL 15-6-6(a) is patterned, leave should be freely given absent other factors such as undue delay, bad- faith or dilatory motive, repeated failure to cure deficiencies by previous amendment, or futility of the amendment. Schecher v. Shakstad Elec. & Mach. Works, Inc., 414 N.W.2d 303, 304 (S.D.1987); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct, 227, 230, 9 L.Ed.2d 222 (1962). As we observed in Isakson:
[The court will consider the] hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the'material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted....
... Thus, courts have allowed amendments when it was established that doing so would not unduly increase discovery or delay the trial, and when the opponent could not claim surprise, but effectively should have recognized the new matter included in .the amendment would be at issue.
526 N.W.2d at 737.
[¶ 27.] Appellees’ complaint cites to the will, making Zoss’s usé thereof hardly surprising. Appellees’ motion in limine further reflects that they were aware Zoss might raise the issue of Margaret’s intent regarding rent due and the power of attorney. Meanwhile, exclusion of the will not only excluded'important evidence proper for the jury to consider, but also severely hampered the efforts of the defense. Ap-pellees’ cognizance of both the will and Zoss’s argument means introduction of the will should not have rendered them unprepared. When weighing the hardship im *71 posed by the circuit court’s refusal to grant leave with the prejudice faced by the Appellees, Zoss should have been allowed to amend his pleadings.
[¶ 28.] This leaves the question whether Bienash would apply to exclude the will in the first place. The motion in limine excluded all extrinsic evidence of Margaret’s intent, without reference to whether it was oral or written. The circuit court, in granting the motion, relied on Bienash. In Bienash, this Court surveyed the decisions of other jurisdictions and held that “an attomey-in-fact may not self-deal unless the power of attorney from which his or her authority is derived expressly provides in clear and unmistakable language authorization for self-dealing acts.” Bienash, 2006 S.D. 78, ¶ 27, 721 N.W.2d at 487. But we left “for another day the issue of whether extrinsic evidence in the form of a writing should be admitted to raise a factual issue[.]” Id. ¶ 24.
[¶29.] Kunewa, a decision that influenced both this Court in Bienash and others cited therein, stated that “[w]hen one considers the manifold opportunities and temptations for self-dealing ... the justification for such a flat rule is apparent.” Kunewa v. Joshua, 83 Hawai'i 65, 924 P.2d 559, 565 (Haw.Ct.App.1996). The court in Kunewa prohibited the use of affidavits summarizing oral statements made by the defendant’s mother evincing the mother’s intention to permit self-dealing, concluding that “[o]ral authorization- is not acceptable.” Id. Even where the power of attorney granted the defendant broad authority to do everything his mother “might or could do if personally present,” the Kune-wa court refused to look to extrinsic evidence, concluding that the language in the power of attorney was clear and unambiguous. Id. at 566. The court also noted that it would be “most unusual for an owner of property to grant a power of attorney authorizing the attorney in fact to give his property away. If a person has decided to make a gift of property, he or she usually decides as to who is going to be the donee.” Id.
[¶ 30.] Other decisions, like Praefke v. Am. Enter. Life Ins. Co., 257 Wis.2d 637, 655 N.W.2d 456 (Wis.Ct.App.2002), follow a similar approach, establishing a “corollary to this bright-line rule” that, absent language which “expressly and unambiguously grants the authority” to make gifts to oneself, “extrinsic evidence of the principal’s intent to allow such gifts is not admissible.” Id. at 461. But these cases dealt only with oral authorizations. In Bienash we réserved ruling oh the question whether a writing should1 be admissible to resolve a factual dispute. We should now address this issue.
[¶ 31.] Here we have a prior writing made by Margaret. The will, though executed before the power of attorney, provided context for the power of attorney. As an expression of her intentions, it eliminates the concern that the defendant might mislead the fact finder. It would be “most unusual,” moreover, for the power of attorney to contradict Margaret’s written intentions regarding the disposal of land and forgiveness of debts. Kunewa, 924 P.2d at 565. As the Supreme Court of Vermont observed: “Ideally, the intention of the parties will always be apparent from the express language of the power of attorney itself. Unfortunately, that is nob always the case.” In re Estate of Kurrelmeyer, 187 Vt. 620, 992 A.2d 316, 319 (2010). Jurisdictions elsewhere have expressed similar concerns about a bright line prohibition against extrinsic evidence. The Supreme Court of Delaware, while acknowledging the adoption of the “bright line” rule articulated in Kunewa and adopted by several states,[6] nevertheless *72 declined to adopt the rule, stating that “[i]f the grantor’s intent is the primary concern in interpreting a durable power of attorney, a bright line rule might not always serve the interest of justicef.]” Schock v. Nash, 732 A.2d 217, 228-229 (Del.1999). Other courts have likewise rejected a bright line rule forbidding extrinsic evidence and instead permit consideration of the surrounding circumstances and intentions of the grantor.[7]
[If 32.] A middle ground approach would allow written extrinsic evidence but bar oral testimony including written summaries of the same. Such an approach satisfies both the fears raised in Kunewa and the problems inherent in an unduly narrow construction of documents as addressed in Kurrelmeyer. The circuit court read our holding in Bimash too narrowly, and on remand should allow Hein to amend his pleadings and receive the will into evidence.

. See generally Aiello v. Clark, 680 P.2d 1162 (Alaska 1984); Hodges v. Surratt, 366 So.2d *72 768 (Fla.Dist.Ct.App.1978); In re Estate of Crabtree, 550 N.W.2d 168 (Iowa 1996); In re DeBelardino’s Estate, 77 Misc.2d 253, 352 N.Y.S.2d 858, 862-63 (N.Y.Sur.1974), decree aff’d, 47 A.D.2d 589, 363 N.Y.S.2d 974 (N.Y.App.Div.1975); Whitford v. Gaskill, 345 N.C. 475, 480 S.E.2d 690 (1997), opinion amended on reh'g, 345 N.C. 762, 489 S.E.2d 177 (1997); Bryant v. Bryant, 125 Wash.2d 113, 882 P.2d 169 (1994).

. See, e.g., LeCraw v. LeCraw, 261 Ga. 98, 401 S.E.2d 697, 698 (1991) (holding gifts made by attorney-in-fact authorized despite lacking specific authorization to make gifts of principal's property because, while "[a] formal power of attorney is subject to a strict construction ... ascertainment of the intent of the parties plays an important role in the construction of a power of attorney, as it does in construing any contract.”) (citations omitted); King v. Bankerd, 303 Md. 98, 492 A.2d 608, 611 (1985) ("[T]he rule of strict construction 'cannot override the general and cardinal rule’ that the court determine the intention of the parties. To ascertain this intent, [we] emphasized that the language used in the instrument and the object to be accomplished be viewed in light of the surrounding circumstances.”) (citations omitted); Seigworth v. State, 91 Nev. 536, 539 P.2d 464, 465 (1975) ("The extent of a power of attorney must be determined by the language employed in the document aided by the situation of the parties and surrounding circumstances.”). See also Ralph C. Brashier, The Ghostwritten Will, 93 B.U. L.Rev. 1803, 1831 n.178 (2013).