### In re SCOTT.

[Cite as *In re Scott* (1996), 111 Ohio App.3d 273.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–253.

Decided May 24, 1996.

---

*Fred E. Henning,* for appellee Sylvester Scott, Executor.

*Maria Quinto Buchanan,* for appellants Willie Scott et al.

SHERCK, Judge.

This is an appeal from a judgment issued by the Lucas County Court of Common Pleas, Probate Division. The probate court ordered one of decedent's sons, who was the holder of his late father's power of attorney, to reimburse his father's estate for monies removed from his father's bank account after his father had died. Because we conclude the trial court could have properly found that there was no *inter vivos* gift to the power of attorney holder, we affirm.

Shortly after his wife's death in early April 1994, decedent, Louis Scott, moved into the home of one of his sons, appellant Willie Scott. Louis Scott was in ill health at the time of this move. The following week, appellant took his father to a legal clinic where Louis Scott executed a durable power of attorney naming appellant as his attorney-in-fact. At some point after this, Louis Scott gave appellant the title to his car and the passbook to his savings account. According

to appellant, his father intended these things to be gifts to him. On May 27, 1994, appellant withdrew $3,000 from the savings account.

In the early morning hours of June 1, 1994, Louis Scott went into diabetic shock and was hospitalized. According to appellant, at 8:30 a.m. he was informed that his father's condition had stabilized and appellant was then free to leave the hospital. At 11:22 a.m., appellant, utilizing the power of attorney his father had given him, closed Louis Scott's savings account and deposited the balance into his own account. From the bank, appellant went to an auto title bureau office and transferred the title of his father's car into his own name. Louis Scott died at 10:41 a.m.

After Louis Scott's death, appellee Sylvester Scott, who is appellant's brother, was appointed executor of their father's estate. Appellee sought an order from the probate court declaring all the funds appellant had taken and the value of the car to be estate property; appellee further requested that the court order appellant to make the estate whole.

Following a hearing on the matter, the court concluded that the transactions which occurred after Louis Scott's death were invalid and ordered appellant to reimburse the estate for the monies realized from them. From that judgment, appellant brings this appeal setting forth the following two assignments of error:

"First Assignment of Error

"I. The trial court having ruled that the appellant was entitled to retain $3,000.00 withdrawn from decedent's savings account prior to death pursuant to a power [of] attorney erred, as a matter of law, in ordering appellant to return to the estate the balance of the funds withdrawn from the same account after death since the entire savings account constituted a completed inter vivos gift.

"Second Assignment of Error

"II. The trial court's judgment that the balance of funds withdrawn after death must be turned over to the estate is against the manifest weight of the evidence."

We will discuss appellant's assignments of error together.

It has long been held that the death of a party revokes a power of attorney given by that party. *McDonald v. Black's Admr.* (1851), 20 Ohio 185, syllabus. Traditionally, the same was true if the principal became incompetent. See *Lawrence v. McArter* (1840), 10 Ohio 37, 42. R.C. 1337.09, the durable power of attorney statute, modifies the common law to the extent that a power of attorney fashioned according to the statute remains effective, even if the principal later becomes disabled, incapacitated or is adjudged incompetent. A companion statute, R.C. 1337.091, provides that even the death of a principal who has

executed a written durable power of attorney does not revoke the power and authority of a designated attorney-in-fact "who, without actual knowledge of the death * * * of the principal, acts in good faith under the power of attorney." R.C. 1337.091(A).

The holder of a power of attorney has a fiduciary relationship with his or her principal. Such a relationship is "one in which special confidence and trust is reposed in the integrity and fidelity of another * * * by virtue of this special trust." *Stone v. Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 66–67, 419 N.E.2d 1094, 1097–1098. In such a relationship, the person who holds the power bears the burden of proof on the issue of the fairness of the transaction. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 166, 542 N.E.2d 654, 660. Additionally, as the trial court in this matter noted, any transfer of property from a principal to his attorney-in-fact must be viewed with some suspicion.

Both of appellant's assignments of error, in essence, challenge the weight of the evidence supporting the trial court's determination. On such challenges, the trial judge is in the best position to weigh the credibility of witnesses. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. For this reason, appellate courts are guided by the presumption that the findings of a trier of fact are correct. *Id.* This presumption is all the more rigorous to overcome for the party who is charged with the burden of proving his or her claim. That party "has little leave to complain if a finder of fact chooses not to believe some or all of his proofs." *Fantozzi v. Sandusky Cement Products* (June 24, 1994), Erie App. No. E–93–31, unreported, 1994 WL 318750; see, also, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

We have thoroughly reviewed the record in this case. The evidence is undisputed that, although physically infirm, Louis Scott was mentally alert until he died. Therefore, it was reasonable for the trial court to conclude that the $3,000 transfer to appellant before his father's death was with Louis Scott's express consent. This explains the perceived inconsistency, complained of in appellant's first assignment of error, whereby the court allowed appellant to keep the funds transferred prior to Louis Scott's death but ordered those transferred after his demise returned.

Regarding the after-death transfers, even if appellant was not aware of his father's death at the time he closed the bank account and transferred the car, the burden is still his to show that he acted in good faith for the power of attorney to be effective pursuant to R.C. 1337.091. To do this, appellant must prove his assertion that these transactions were merely the completion of an *inter vivos* gift from his father. The trial court, noting that had Louis Scott desired to

make such gifts to appellant, he could have done so at the time he executed the power of attorney, rejected appellant's claim. In our review of the record, we cannot conclude that this decision was manifestly against the weight of the evidence. Accordingly, both of appellant's assignments of error are found not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK and GLASSER, JJ., concur.