This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, William Donnet, Marlene Donnet, and the United Church of Christ in Bloomville, Ohio, appeal from the judgment of the Summit County Court of Common Pleas, Probate Division, which granted summary judgment to appellees, David Bacon, individually and as executor for the estate of Mary Saurwein; Dale Fashinpaur; and Heidelberg College. This Court affirms.
{¶ 2} In 1999, Clifford and Mary Saurwein had been married to each other some seventy years and were in their nineties. They had no children of their own. For some period of time, they each had estate plans that left the bulk of their assets to Heidelberg College, from where Clifford had graduated and Mary had attended for one year. William Donnet, ("Donnet"), their nephew, had apparently not been named as a beneficiary of either estate.
{¶ 3} In March of 1999, Clifford and Mary Saurwein each executed new wills, drafted by Attorney Bacon. On August 16, 1999, Mary Saurwein also executed a durable general power of attorney ("DPA"), naming Donnet as her attorney-in-fact. Clifford died on August 22, 1999, and left approximately $400,000 to Donnet pursuant to that will. According to Mary Saurwein's will of March 1999, $100,000 would go to the United Church of Christ in Bloomville, Ohio ("Bloomville Church") and the residue, then valued at approximately $3,000,000, would go to Donnet.
{¶ 4} Early in November of 1999, Mary Saurwein collapsed and was hospitalized. After being released from the hospital, on approximately November 10, 1999, she was placed in Briarwood Nursing Home. Shortly thereafter, Donnet and his family emptied Mary Saurwein's Akron apartment. Donnet's two children and their spouses were paid $5,000 per couple for assisting in cleaning out the apartment. Donnet and his family kept many items of personal property for themselves from the apartment, and another nephew, Harold Wolfe, also took some items.
{¶ 5} On or about November 15, 1999, Mary Saurwein changed the status of her $460,000 checking account to include Donnet with joint and survivor status.
{¶ 6} While at Briarwood, Mary Saurwein was diagnosed with dementia and it was determined that she needed to be placed in a nursing home with a behavior unit. According to Donnet, Bacon suggested placement in Fairhaven Community Nursing Home ("Fairhaven") in Wyandot County. On November 23, 1999, Mary was moved to Fairhaven and placed in a behavior unit.
{¶ 7} On December 8 and 9, 1999, Mary Saurwein executed a new will and codicil, drafted by Bacon, which once again designated Heidelberg College as the primary beneficiary of her estate. Under this will, Donnet would receive an amount equal to the unified tax credit, or approximately $675,000. The codicil clarified that the checking account funds would be included in and deducted from the $675,000 bequest. Attorney Bacon notified both Heidelberg College and Donnet of this change in Mary Saurwein's estate plan by letter. The letter to Donnet also assured him that the durable power of attorney, dated August 16, 1999, was still in effect and that Mary Saurwein wanted him to continue in that capacity.
{¶ 8} Shortly thereafter, Donnet contacted a personal attorney. On December 23, 1999, Donnet created the "Mary B. Saurwein Revocable Trust Agreement" ("the Trust") under the apparent authority of his DPA. He signed the Trust, both as the attorney-in-fact for Mary Saurwein, the grantor, and for himself, as trustee. The Trust was funded with approximately $3,000,000 of securities transferred from Mary Saurwein's account. The Trust listed Donnet as trustee and his wife, Marlene Donnet, as successor trustee. The Trust reserved a power to revoke only to Donnet, in his individual capacity, and to his wife. Under the Trust, Mary Saurwein had no power of revocation and no power to remove or replace the trustee.
{¶ 9} This conclusion provided that all income was to be paid to or for the benefit of Mary Saurwein during her lifetime. Additionally, the trustee could invade the principal of the Trust in his discretion as necessary for Mary Saurwein's welfare.
{¶ 10} At the death of Mary Saurwein, the Trust provided that distributions of $100,000 each were to be made to Heidelberg College and the Bloomville Church. The balance would then pass to Donnet if he survived, otherwise to Marlene Donnet, subject to a discretionary power in the trustee to appoint some amount in excess of the federal tax exemption equivalent available in Mary Saurwein's estate to Heidelberg College.
{¶ 11} The Trust also included an in terrorem clause which stated that both Heidelberg College and Bloomville Church would forfeit their distributions from the Trust if either of them "disputes either the amount to be distributed and paid over, or the authority of the Trustee to make such determination."
{¶ 12} On the same day the Trust was created, Donnet also withdrew $400,000 from Mary Saurwein's checking account and placed the money in accounts registered to Donnet and Marlene Donnet. Shortly thereafter, he placed these funds in accounts registered to Donnet and Mary Saurwein, as joint tenants with right of survivorship.
{¶ 13} It is undisputed that Donnet created the Trust and transferred the checking account funds without Mary Saurwein's knowledge or agreement.
{¶ 14} In March 2000, Mary Saurwein executed another will, again drafted by Bacon, which excluded Donnet as a beneficiary of her estate entirely. Additionally, Mary Saurwein revoked Donnet's power of attorney. She appointed nephew, Harold Wolfe, as her power of attorney for health care, and she appointed her accountant, Dale Fashinpaur, as her power of attorney for business affairs.
{¶ 15} After Donnet was notified of the revocation of his DPA, he removed an additional $60,000 from Mary Saurwein's bank account. Dale Fashinpaur then retained counsel to assist in recovering possession of Mary Saurwein's assets. The newly created Trust was located at Merrill Lynch. On April 12, 2000, Bacon prepared a revocation of the Trust and Fashinpaur presented the revocation to Merrill Lynch, who released the funds to Fashinpaur's authority.
{¶ 16} On April 13, 2000, Mary Saurwein initiated this action by filing a complaint in the general division of the Summit County Court of Common Pleas against William Donnet for an accounting and for conversion. The complaint was subsequently amended to include an allegation of embezzlement and also to seek a declaratory judgment that the Trust was void or had been revoked, because its creation reflected a breach of Donnet's fiduciary duty to Mary Saurwein.
{¶ 17} Donnet answered and counterclaimed. Marlene Donnet and the Bloomville Church joined Donnet in the counterclaim against Bacon, Fashinpaur and Heidelberg College.[1] The counterclaim asserted wrongful interference, fraudulent misrepresentation, undue influence, and interference with Donnet's contractual rights by Bacon and Fashinpaur. For their prayer, the counterclaimants sought a declaratory judgment that the Trust and Donnet's DPA were valid. They also sought a corollary declaration that Mary Saurwein's revocation of the Trust and Fashinpaur's power of attorney were void.
{¶ 18} Early in these proceedings, the trial court issued an injunction, permitting expenditures only for the necessary expenses of Mary Saurwein, and ordered monthly accountings to be filed by Fashinpaur. On July 24, 2001, the case was transferred from the general division to the Probate Division of the Court of Common Pleas, pursuant to a joint resolution and order regarding cases involving inter vivos trusts.
{¶ 19} Ultimately, motions for summary judgment were filed by Mary Saurwein, Donnet, Bacon, Fashinpaur, and Heidelberg College. Mary Saurwein moved for partial summary judgment on the portion of her complaint that sought a declaration that the Trust was void because its creation violated Donnet's fiduciary duty to her, as well as on the counterclaim by Donnet, Marlene Donnet and Bloomville Church. Mirroring that request, Donnet, Marlene Donnet, and Bloomville Church moved for partial summary judgment on their counterclaim to restore the trust and ratify Donnet's actions taken pursuant to his DPA. Heidelberg College moved for partial summary judgment, seeking the same relief as Mary Saurwein. Bacon and Fashinpaur each moved for summary judgment on the counterclaim. Thus, essentially, all parties sought a declaratory judgment from the trial court as to the validity of the Trust.
{¶ 20} Mary Saurwein died on September 14, 2001, before the trial court ruled on the motions for summary judgment. An application to probate Mary Saurwein's estate and the December 1999 will was filed in Wyandot County, as that was the location of Fairhaven. David Bacon was appointed executor of the estate. As such, he was substituted as party plaintiff for Mary Saurwein in the present action.
{¶ 21} Following a hearing on the motions, the trial court granted partial summary judgment to Bacon, as executor for the estate of Mary Saurwein, and against Donnet, declaring the Trust to be void because its creation was a breach of Donnet's fiduciary duty. The court also granted summary judgment to Bacon, in his individual capacity; Fashinpaur; and Heidelberg College on Donnet's counterclaim. Bacon, as executor, subsequently filed a voluntary dismissal of the remaining claims in the original complaint.
{¶ 22} A notice of appeal was filed by Donnet, Marlene Donnet, and the Bloomville Church ("appellants"). The action is now before this Court for review of five assignments of error. The first, second and fourth assignments of error will be considered together.
 ASSIGNMENT OF ERROR NO. 1 "THE COURT ERRED IN FINDING THAT WILLIAM DONNET BREACHED HIS FIDUCIARY DUTY TO MARY SAURWEIN WITHOUT FIRST DETERMINING IF MARY SAURWEIN HAD PERMANENTLY LOST EITHER TESTAMENTARY OR CONTRACTUAL CAPACITY ON NOVEMBER 3, 1999."
 ASSIGNMENT OF ERROR NO. 2 "THE COURT ERRED IN FINDING THAT THE EXERCISE OF UNDUE INFLUENCE ON A DEMENTED 90 YEAR OLD PRINCIPAL WAS IRRELEVANT IN DETERMINING WHAT STEPS AN ATTORNEY-IN-FACT UNDER A DURABLE POWER OF ATTORNEY MAY PROPERLY TAKE TO PROTECT THE PRINCIPAL FROM THOSE WHO WOULD TAKE ADVANTAGE OF HER."
 ASSIGNMENT OF ERROR NO. 4 "THE TRIAL COURT ERRED IN FINDING NO EVIDENCE WHICH SUPPORTS PROPER JUSTIFICATION FOR THE ACTIONS OF WILLIAM DONNET AND TO SUPPORT HIS CLAIMS OF WRONGFUL INTERFERENCE BY OTHERS."
{¶ 23} Through these three assignments of error, appellants have challenged the ruling of the trial court granting summary judgment to Bacon, as executor for the estate of Mary Saurwein; Bacon, in his individual capacity; Fashinpaur; and Heidelberg College. Appellants assert error by the trial court in: (1) not determining the testamentary capacity of Mary Saurwein after November 3, 1999; (2) not considering the possible exercise of undue influence by Bacon, Fashinpaur and others on Mary Saurwein as justification for creation of the Trust; and (3) finding a lack of evidence to justify Donnet's actions and demonstrate wrongful interference of others.
{¶ 24} Pursuant to Civ.R. 56(C), summary judgment is proper if:
{¶ 25} "(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party."State ex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589.
{¶ 26} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. Doubts must be resolved in favor of the nonmoving party. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 686. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion, identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the opposing party's claims, and demonstrating that the moving party is entitled to judgment as a matter of law. See Dresher v. Burt (1996),75 Ohio St.3d 280, 292-293. The movant must point to "some evidence of the type listed in Civ.R. 56(C) which affirmatively shows that the nonmoving party has no evidence to support [the nonmoving party's] claims." (Emphasis sic.) Id. at 293.
{¶ 27} When a moving party has met this initial burden, the opposing party has a reciprocal burden. Id. The opposing party may not rest upon mere allegations or denials of the pleadings, but, instead, must set forth specific facts showing the existence of a genuine issue for trial. State ex rel. Burnes v. Athens Cty. Clerk of Courts (1998),83 Ohio St.3d 523, 524. If the opposing party fails to so respond, summary judgment, if appropriate shall be entered against that party. Civ.R. 56(E).
{¶ 28} A power of attorney is a written instrument that authorizes an agent to perform specific acts on behalf of his principal. Testa v.Roberts (1988), 44 Ohio App.3d 161, 164. A durable power of attorney is a subclass of powers of attorney which are unaffected by the disability of the principal or lapse of time. R.C. 1337.09(A). However, the authority of an attorney-in-fact does not extend beyond the death of his principal. In re Scott (1996), 111 Ohio App.3d 273, 275, citing Duncan v.Administration of Black (1851), 20 Ohio 185, syllabus. See R.C. 1337.09.1. In general, a power of attorney is to be construed strictly against any enlargement beyond the authority actually conferred. Roberts v. Davis
(1940), 66 Ohio App, 527, 530.
{¶ 29} "The holder of a power of attorney has a fiduciary relationship with his or her principal." In re Scott,111 Ohio App.3d at 276. "`A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" Stone v. Davis (1981), 66 Ohio St.2d 74, 78, quoting In re Termination of Employment (1974), 40 Ohio St.2d 107, 115. A fiduciary owes the utmost loyalty and honesty to his principal. Testa,44 Ohio App.3d at 165.
{¶ 30} The law is zealous in guarding against abuse of such a relationship. In re Termination of Employment, 40 Ohio St.2d at 115. Any transfer of property from a principal to his attorney-in-fact is viewed with some suspicion. Studniewski v. Krzyzanowski (1989),65 Ohio App.3d 628, 632. Self-dealing transactions by a fiduciary are presumptively invalid. Estate of Cunningham (Oct. 25, 1989), 5th Dist. No. 89-CA-10. In such a case, the attorney-in-fact is obligated to demonstrate the fairness of his conduct. In re Scott, 111 Ohio App.3d at 276; In re Estate of Case (Apr. 3, 1998), 2nd Dist. No. 16747. See, also, In re Estate of Harmon (June 5, 1996), 9th Dist. No. 95CA0066 ("It is a most egregious violation of a fiduciary's duty to abuse the relationship through acts of self-dealing.").
{¶ 31} The Ohio Supreme Court declared over a hundred years ago:
 "This court has frequently declared with emphasis its disapproval of all schemes and devices by which trustees may seek, even with honest motives, to acquire in their own right, the trust property committed to their hands for administration in the interests of beneficiaries whose rights should be guarded with scrupulous fidelity. Any relaxation of this salutary principle would be full of peril and uncertainty." Caldwell v. Caldwell (1888), 45 Ohio St. 512, 523.
{¶ 32} In this case, the moving parties — Mary Saurwein, as represented by Executor Bacon; Bacon, individually; Fashinpaur; and Heidelberg College — presented evidentiary material in an effort to demonstrate self-dealing by Donnet and, therefore, establish the invalidity of the Trust as a matter of law. They did so by presenting Civ.R. 56(C) materials showing that shortly after learning of the December 1999 will of Mary Saurwein and acting under the apparent authority of a DPA, Donnet placed all of Mary Saurwein's securities in the subject Trust, transferred $400,000 from her checking account, emptied Mary Saurwein's apartment of her possessions, and gave $10,000 to Donnet's children and their spouses for cleaning out the apartment. Subsequently, after learning of the revocation of his DPA and a new will, which excluded him entirely as a beneficiary, Donnet removed an additional $60,000 from Mary Saurwein's bank account. The moving parties also pointed to the deposition testimony of Marlene Donnet that the Trust was created only because Mary Saurwein had changed her will and taken away part of her husband's expected inheritance.
{¶ 33} For their part, appellants were then required to demonstrate the fairness of Donnet's conduct using Civ.R. 56(C) evidentiary materials.[2] To do so, appellants below sought to establish the testamentary incapacity of Mary Saurwein following her November 1999 hospitalization as well as the existence of improper influences upon her by Bacon, Fashinpaur and others. Appellants argue similarly on appeal, that they met their Dresher burden and that summary judgment was, therefore, improperly granted.
{¶ 34} The trial court held that the moving parties met their initial burden under Dresher, finding that the evidence of self-dealing by a fiduciary created a presumption that the Trust was invalid as a matter of law. In addition, the trial court found that appellants failed to meet their burden of going forward with any evidence that established the fairness of Donnet's actions or, at least, demonstrated the existence of a genuine issue of fact in that regard. This Court agrees.
{¶ 35} On appeal, appellants first claim the trial court erred in failing to consider whether Mary Saurwein had become permanently incapacitated after November 3, 1999. Appellants contend that this purported incapacity would provide evidence of the fairness of Donnet's actions in creating the Trust. This is so, appellants maintain, because the Trust provided Donnet with no greater financial benefit than did the will of March 1999. Appellants further assert that, because of Mary Saurwein's purported incapacity, she was no longer able to change her testamentary disposition from that which was stated in the will of March 1999. This would mean, according to appellants, that the March 1999 will was Mary Saurwein's last will and also that it must be an effective disposition of her assets.
{¶ 36} It is well established, however, that a will is ambulatory in nature until the death of the testator and until the law admits such instrument to probate. Corron v. Corron (1988), 40 Ohio St.3d 75, paragraph two of the syllabus. This means not only that potential takers have no accrued rights in the will of a living person, but also that the purported will is not legally effective as a dispositive instrument until the death of the testator and admission of the instrument to probate. See id. Thus, even assuming the invalidity of the December 1999 will because of an incompetent testator, that does not necessarily mean that the March 1999 will would be legally effective. No legatee or devisee secures a vested right in the property of the testator during the ambulatory period of a will.
{¶ 37} Therefore, appellants' efforts to establish a lack of testamentary capacity in Mary Saurwein cannot prove the fairness of Donnet's actions as a fiduciary. The question of Mary Saurwein's competency is irrelevant to the question of whether Donnet's actions in creating the subject Trust were fair to his principal.
{¶ 38} Next, appellants assert that they met their burden below with allegations of improper behavior by Bacon, Fashinpaur, and others. Appellants allege that Bacon and Fashinpaur improperly influenced Mary Saurwein to change her will. They contend that such behavior entitled Donnet to create the Trust.
{¶ 39} The factors to which appellants pointed include the following. Bacon recommended Fairhaven as a nursing facility for Mary Saurwein. Bacon's sister was employed in the Department of Development at Heidelberg College. Bacon's brother-in-law was an associate in Bacon's law firm. Representatives from Heidelberg visited Mary Saurwein at Fairhaven. None of these factors constitute actual evidence of wrongful inference, fraudulent misrepresentation, undue influence or interference with Donnet's contractual rights by Bacon, Fashinpaur or others.
{¶ 40} Moreover, appellants have offered no legal authority, nor is this Court aware of any, that supports a proposition that a fiduciary may engage in the self-dealing of virtually an entire estate because he perceives others are behaving improperly.
{¶ 41} Additionally, appellants have not presented any evidence that Donnet's actions were designed or necessary for the protection of Mary Saurwein's assets against such alleged improper influences. Indeed, Donnet's actions did nothing to protect Mary Saurwein's assets. Rather, the actions taken by Donnet in this matter only protected his access to her assets.
{¶ 42} The question of whether or not it was the final intent of Mary Saurwein that Donnet should inherit any of the assets of her estate is not before this Court. Our inquiry is directed only towards the fairness of Donnet's actions in establishing the Trust. In the present case, appellants have failed to meet their burden of going forward with evidence demonstrating the fairness of his conduct. The trial court did not err (1) in not determining the testamentary capacity of Mary Saurwein after November 3, 1999; (2) in not finding allegations of wrongful influence by others to be a justification for the creation of the Trust; or (3) in finding a lack of evidence to justify Donnet's actions. Summary judgment was appropriately granted regarding the validity of the trust. The first, second, and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. 3 "THE COURT ERRED BY APPLYING A "KISS-OF-DEATH" TEST TO A DURABLE POWER OF ATTORNEY THAT CONTAINED, IN ADDITION TO A GENERAL GRANT OF POWERS, EXPRESS AND UNCONDITIONAL AUTHORITY TO GIFT AND TO CREATE TRUSTS EVEN AFTER THE ACTUAL OR SUSPECTED INCAPACITY OF THE PRINCIPAL."
{¶ 43} In the third assignment of error, appellants contend that the trial court erred in finding that the fiduciary duty of loyalty prohibits self-serving actions, even if such actions come within the express terms of the power of attorney. The argument is overruled.
{¶ 44} Notwithstanding any express authority included in a power of attorney to make gifts to oneself and to create trusts, a fiduciary remains subject to a standard of care. The fiduciary, therefore, continues to be bound by the overriding duty of loyalty to act for the benefit of the principal and not for the benefit of himself. Restatement of the Law 2d, Agency (1958) Section 39. Any gifts must be made in the best interests of the principal and solely to further the interests of the principal, even at the expense of the agent's interests. Restatement of the Law 2d, Agency (1958) Section 393.
{¶ 45} A fiduciary may not use the special confidence and trust which a fiduciary duty imposes to acquire or retain property for himself. See, e.g., Connelly v. Balkwill (1954), 160 Ohio St. 430,440-441; Gotthardt v. Candle (1999), 131 Ohio App.3d 831; In re Scott,111 Ohio App.3d at 276. The fact that Donnet was expressly authorized by a DPA to make gifts of Mary Saurwein's property is irrelevant if the act was done for a purpose that constituted a breach of his duty of loyalty. Restatement (Second) Agency, Sections 39, 387. See Estate of Cunningham
(Oct. 25, 1989), 5th Dist. No. 89-CA-10 (changing principal's certificates of deposit to joint and survivor status under color of a broad power of attorney is improper).
{¶ 46} Appellants argue that Donnet's actions were designed to protect the principal or her assets. However, as stated above, the actions which Donnet chose to take did not protect either Mary Saurwein or her assets. Instead, they protected Donnet's access to those assets. Therefore, Donnet violated his fiduciary duty of loyalty by impairing Mary Saurwein's rights with respect to her assets.
{¶ 47} This is not a situation where the principal has made a series of $10,000 gifts for estate tax purposes. This is a situation where the fiduciary has attempted to ensure that an entire estate of $5,000,000 would pass to his own control at the death of his principal. Furthermore, he has done so by taking a revocable power that terminates at death, and unilaterally transforming it into a trust, irrevocable by Mary Saurwein, that would control her testamentary dispositions. A fiduciary cannot fairly use his or her power in this manner.
{¶ 48} Moreover, nothing in the DPA expressly authorized Donnet to self-deal virtually the entire estate to himself with control that was revocable only by himself or his spouse. Neither did the DPA convey a right to make testamentary dispositions on her behalf.
{¶ 49} Appellants cite In re Estate of Case, which denied the authority of a fiduciary to make gifts because there was no express gift-giving language in the power of attorney. The implication is that express language may have authorized the gifts. However, Case did not involve a gift of virtually the entire estate. Indeed, we are aware of no Ohio case that has permitted a fiduciary to convert testamentary control of an entire estate to himself under a DPA gift-clause.
{¶ 50} Appellants also cite the South Carolina case of Fender v.Fender (1985), 285 S.C. 260, 329 S.E.2d 430 as support for the proposition that express language in the power of attorney authorized his creation of a trust. Fender held that an oral authorization by the testator was ineffective to accomplish a transfer of property and money. The court stated that "[t]he power to make any gift must be expressly granted in the instrument itself." Id. at 262. Again, that is not the same as to say that such language would authorize the irrevocable transfer of the entirety of an estate. It is noteworthy that the South Carolina court also advised: "It is for the common security of mankind `that gifts procured by agents from their principals, should be scrutinized with a close and vigilant suspicion.'" Id., quoting Harrisonv. Harrison (1958), 214 Ga. 393, 105 S.E.2d 214, 218.
{¶ 51} Appellants next contend that the DPA contains a clause by which the principal purportedly ratifies the actions of the attorney-in-fact, and maintains that such a clause is intended to apply during incapacity of the principal. Ratification, however, "must follow
knowledge of the facts." (Emphasis added.) Morr v. Crouch (1969),19 Ohio St.2d 24, paragraph four of the syllabus. There is no evidence that Mary Saurwein ratified the conduct of Donnet.
{¶ 52} Appellants next maintain that the family gift presumption applies to the present case and supports a finding in their favor. This presumption applies to purchases made by a donor, who then titled the item to a relative. In such a circumstance, the property is presumed to be held as a gift or advancement. However, this presumption is not applicable in the case at bar. First, there is no evidence that Mary Saurwein, the would-be donor, purchased property and titled it to Donnet. Second, where the family members are also in a fiduciary relationship, the family gift presumption yields to the more specific presumption of undue influence that arises in fiduciary relationships. Inre Guardianship of Blumetti (Jan. 14, 1994), 11th Dist. No. 92-T-4752;Johnson v. Johnson (Aug. 1, 1984), 2nd Dist. No. 1914.
{¶ 53} For these reasons, the third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 5 "THE TRIAL COURT ERRED IN FINDING THAT A LACK OF PRIVITY BETWEEN WILLIAM DONNET AND DAVID BACON AND DALE FASHINPAUR ESTABLISHES A LACK OF STANDING TO SUE BACON AND FASHINPAUR."
{¶ 54} In their fifth assignment of error, appellants assert that the trial court erred in finding a lack of privity between Donnet, on the one hand and Bacon and Fashinpaur, on the other, such that Donnet lacked standing to sue Bacon and Fashinpaur for improper influence or conversion of Mary Saurwein's assets.
{¶ 55} Having found the subject trust to be void as a matter of law, this Court finds this assignment of error to be without merit. Moreover, Donnet presented no record evidence in support of his claims. Therefore, the fifth assignment of error is overruled.
{¶ 56} Accordingly, appellants' five assignments of error are without merit. The judgment of the trial court, granting summary judgment to David Bacon, as executor for the estate of Mary Saurwein, David Bacon, individually, Dale Fashinpaur and Heidelberg College is affirmed.
SLABY, P.J. and WHITMORE, J. CONCUR.
[1] The facts stated here represent the counterclaim as it was ultimately framed, following two sets of amendments, and a court order to join all necessary parties. The Attorney General was added as a nominal party because the action involved a charitable trust. See R.C. 109.23 et seq.
[2] Prior to the hearing of this appeal, appellants filed a motion in this Court to supplement the record with a transcript of the videotaped deposition of Mary Saurwein. Because the complete record of the proceedings was not yet before this Court, the motion was provisionally granted at that time.
It is now apparent that the videotape of the deposition of Mary Saurwein was a part of the record below, but the transcript of that deposition was not. The record on appeal may contain only matters that were actually before the trial court. A reviewing court cannot permit anything to be added to the record, which was not part of the trial court's proceedings. State v. Hill (2001), 90 Ohio St.3d 571, 573. Accordingly, appellants' motion to supplement the record with a transcript of the videotape of the deposition of Mary Saurwein is overruled.