[Cite as *Miller v. Paul*, 2014-Ohio-5789.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| MICHAEL B. MILLER | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2014-0024 |
| JEFFREY D. PAUL, EXECUTOR OF | : |  |
| THE ESTATE OF PHYLLIS J. | : |  |
| MURPHY, DECEASED | : | O P I N I O N |
|  |  |  |
| Defendant-Appellee |  |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Muskingum County
Court of Common Pleas, Case No.
CH2011-0437

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     December 29, 2014

APPEARANCES:

For Plaintiff-Appellant         For Defendant-Appellee

JAMES SILLERY                 MARK STUBBINS
35 North College Street        59 North Fourth Street
P.O. Drawer 958               Box 488
Athens, OH 45701           Zanesville, OH 43702-0488

*Gwin, J.*

{¶1} Appellant appeals the April 25, 2014 judgment entry of the Muskingum County Court of Common Pleas granting appellee's motion for summary judgment and the July 3, 2013 judgment entry denying appellant's motion to join new parties.

*Facts & Procedural History*

{¶2} Dorothy Haser ("Haser") lived in Zanesville with her brother Paul. Haser never married, had no children, and her brother predeceased her. Phyllis Jean Murphy ("Murphy") and her husband Charles Murphy were friends with Haser as Charles Murphy and Haser were cousins. Appellant Michael Miller is Haser's second cousin who found Haser in 1993 after doing a genealogy search. On April 4, 2008, Haser purchased a New York Life annuity for $302,228.73 and named Miller as the beneficiary. On May 27, 2008, Haser named Miller as the transfer on death beneficiary on a Huntington Bank account then worth $13,813.21. On May 6, 2009, Haser named Miller as the transfer on death beneficiary of a PNC bank account then worth approximately $52,378. On July 20, 2009, Haser purchased a Sun Life of Canada annuity for $100,000 and named Miller as the beneficiary. Haser's history of making gifts prior to January of 2010 consisted of a number of gifts to the Zanesville Eagles and to St. Nicholas Church. Haser also gave Murphy $50.00 gifts on her birthday and at Christmas.

{¶3} Prior to January of 2010, Haser was independent, paid her own bills, and handled all of her own finances. In January of 2010, Haser fell out of bed and Murphy found Haser lodged up against a register with burns to her body. Haser was taken to

the hospital on January 8, 2010. Haser was transferred to Autumn Health Care on January 18, 2010 where she remained until her death on September 1, 2010.

{¶4} After Haser was transferred to Autumn Health Care, Murphy set up an appointment with Attorney Thom Cooper ("Cooper"). Utilizing the instructions given to him by Murphy and her husband, Cooper prepared a power of attorney for Haser to sign appointing Murphy as Haser's attorney-in-fact. The power of attorney contained the right of the attorney-in-fact to make gifts to herself and specifically allowed the attorney-in-fact to self-deal with respect to any or all of Haser's real or personal property. Cooper had no communication with Haser prior to or after the preparation of the power of attorney. On January 29, 2010, Cooper sent his associate attorney, Ashley Sorgen ("Sorgen") to meet with Haser to sign the power of attorney. Cooper also put Murphy in touch with Jim Zifer ("Zifer"), a financial planning investment specialist.

{¶5} Several weeks after Haser signed the power of attorney document, Murphy attempted to consolidate assets by transferring funds from a PNC account, but the bank required that Haser execute PNC's own power of attorney form and a new signature card for the account that continued to list Miller as the payable on death beneficiary. Norma Brookover, a friend of Haser's, took the PNC forms to Haser at the nursing home on February 12, 2010, and Haser signed the documents. On February 22, 2010, Murphy closed two PNC bank accounts of $53,642.80 and $10,911.80 and put them into a Huntington Bank checking account in Haser's name. On March 5, 2010, Murphy closed four Huntington accounts with an approximate total amount of $218,779.00 and placed the funds into the Huntington checking account with the PNC funds already in it. On March 26, 2010, Murphy closed a Century National Bank IRA

with $2,796.58 and a Century National account of $105,712.47, and placed the funds into the Huntington checking account.

{¶6}    In April of 2010, when Murphy was reviewing Haser's mail, Murphy found a statement from New York Life annuity, an annuity that Murphy had no knowledge of, with an approximate balance of $300,000.  Murphy met with Zifer on April 26, 2010, and, after the meeting, withdrew $120,000 from the annuity and deposited the amount into Haser's Huntington checking account.  Miller received the amount remaining in the annuity after Haser's death, which was approximately $212,056.58.

{¶7}    On April 26, 2010, Murphy, as power of attorney for Haser, wrote herself a $400,000 check from Haser's remaining Huntington checking account designating it as a "gift" in the memo line.  On May 11, 2010, Haser signed a statement naming Murphy the transfer-on-death beneficiary on the Huntington checking account.  Also on the same day, Jennifer Morningstar ("Morningstar"), Cooper's legal assistant, took a trust document to Haser to sign.  The Haser Keystone Inheritance Trust named Murphy as both the lifetime and death beneficiary of the trust.  On May 17, 2010, Murphy, as power of attorney for Haser, wrote herself a check for $80,000 designating it in the memo line as a "gift."

{¶8}    In July of 2010, Murphy learned about Haser's annuity at Sun Life.  On July 20, 2010, Murphy surrendered the Sun Life annuity in the amount of $100,884.83 and placed the funds into the Huntington checking account.  On August 18, 2010, Murphy, as power of attorney for Haser, wrote herself a $100,000 check from Haser's Huntington checking account.  Murphy stated that the gifting of this approximately

$580,000 to herself was suggested by Zifer to accommodate Medicaid planning for Haser.

{¶9}   Miller filed a complaint on August 25, 2011, against Murphy seeking declaratory judgment that Haser was not competent to sign the power of attorney or trust document and that such documents are invalid and void; to set aside inter vivos transfers pursuant to the power of attorney and trust and to award damages as a result of such invalid transfers; and to find that Haser was the subject of undue influence and, as a result, the power of attorney and trust are invalid and void.   Miller requested damages of $300,537.92 (the amount of the accounts that previously listed Miller as the beneficiary upon death until Murphy changed them as power of attorney, plus surrender and early withdrawal penalties), plus interest, punitive damages, costs, and attorney fees.

{¶10}  Murphy died on January 19, 2013, and a suggestion of death was filed in this case on February 20, 2013.   Miller filed a motion to substitute the executor of Murphy's estate as a party defendant on February 27, 2013.   The trial court granted Miller's motion and appellee Jeffrey Paul was substituted as the party defendant.   On March 8, 2013, Miller filed a motion to join new parties to add the adult children of Murphy, who were each beneficiaries of an annuity established by Murphy with the funds she gifted to herself from Haser pursuant to the power of attorney.   The trial court held a hearing on the motion and, on July 3, 2013, denied Miller's motion to join new parties.

{¶11} On July 31, 2013, appellee filed a motion for summary judgment on appellant's claims.   Appellant filed his own motion for summary judgment on March 15,

2013. Numerous depositions were submitted in support of each party's motion for summary judgment, including depositions of Julie Cameron, licensed speech pathologist, Zifer, Miller, Julie Ball, licensed social worker, Morningstar, Sorgen, Cooper, Murphy, Dr. Albirini, Barbara Palmer, a friend of Haser's, Dorothy Rucker, a friend of Haser's, and Mylinda Woodland-Phillips, a licensed social worker. Appellee also submitted the affidavit of nurse Andrew Hooks in support of his motion for summary judgment. On April 25, 2014, the trial court granted appellee's motion for summary judgment and denied Miller's motion for summary judgment.

{¶12} Miller appeals the April 25, 2014 and July 3, 2013 judgment entries of the Muskingum County Court of Common Pleas and assigns the following as error:

{¶13} "I. THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO GRANT APPELLANT MILLER SUMMARY JUDGMENT DECLARING THE POWER OF ATTORNEY AND TRUST, AND ALL ACTS TAKEN PURSUANT THERETO, INVALID DUE TO THE INCOMPETENCY OF DOROTHY HASER.

{¶14} "II. THE TRIAL COURT ERRED IN FAILING TO DECLARE THE ACTIONS TAKEN PURSUANT TO THE POWER OF ATTORNEY AND TRUST INVALID DUE TO THE BREACH OF CONFIDENTIAL AND FIDUCIARY RELATIONSHIP PHYLLIS JEAN MURPHY HAD WITH DOROTHY HASER.

{¶15} "III. THE TRIAL COURT ERRED IN FAILING TO GRANT MILLER'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE POWER OF ATTORNEY AND TRUST WERE THE PRODUCT OF MURPHY'S UNDUE INFLUENCE ON HASER.

{¶16} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED MILLER'S MOTION TO JOIN MURPHY'S CHILDREN AS PARTIES IN THE LAWSUIT.

{¶17} "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING APPELLEE PAUL'S MOTION FOR SUMMARY JUDGMENT AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DOROTHY HASER HAD THE MENTAL AND TESTAMENTARY CAPACITY TO SIGN THE POWER OF ATTORNEY AND TRUST.

{¶18} "VI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING APPELLEE PAUL'S MOTION FOR SUMMARY JUDGMENT AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DOROTHY HASER RATIFIED THE ACTS OF HER ATTORNEY-IN-FACT.

{¶19} "VII. THE TRIAL COURT ERRED IN GRANTING APPELLEE PAUL'S MOTION FOR SUMMARY JUDGMENT AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE POWER OF ATTORNEY AND TRUST WERE THE PRODUCT OF MURPHY'S UNDUE INFLUENCE ON HASER."

*Summary Judgment Standard*

{¶20} Civ.R. 56 states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or

stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶21}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶22}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶23} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

## I. & V.

{¶24} In his first assignment of error, appellant argues the trial court erred in failing to grant his motion for summary judgment declaring the power of attorney and trust invalid due to the incompetency of Haser. Alternatively, appellant argues in his fifth assignment of error that genuine issues of material fact exist as to whether Haser was competent to sign the power of attorney and trust documents.

{¶25} The creation of a power of attorney requires that the principal be mentally competent at the time the power is executed. *Testa v. Roberts*, 44 Ohio App.3d 161, 542 N.E.2d 654 (6th Dist. 1988). "The test to be used to determine mental capacity is the ability of the principal to understand the nature, scope, and extent of the business he is about to transact." *Id.* Mere confusion "and the infirmities of old age are not of themselves determinative of an incapacity to transact one's business, they are

competent proof of capability to understand the nature of the transaction and the ability of one to protect his own interests." *Id.*

{¶26} In support of summary judgment on the issue of Haser's mental capacity, appellee pointed to the deposition testimony of Murphy, Palmer, Rucker, Sorgen, Woodland-Phillips, and Morningstar. Murphy testified that Haser was competent when she signed the power of attorney and trust documents. Though Sorgen had no independent recollection of the day Haser signed the power of attorney, her notes indicate Haser understood the grant of the power of attorney and wanted Murphy to receive her assets at her death. Palmer and Rucker both testified they saw Haser on the date when she signed legal documents and that Haser was competent and of sound mind on the date they visited her. Woodland-Phillips testified that Haser's mental function varied and that Haser might have been able to understand a power of attorney. In his affidavit, Hooks stated that he saw Haser on the day she signed the power of attorney and that she was competent, understood what she was signing, and wanted Murphy to have her money when she died. Morningstar testified that, with respect to the trust documents, she would not have notarized Haser's signature if she thought Haser was not capable of understanding the documents.

{¶27} To counter appellee's evidence and in support of his motion for summary judgment, appellant presented the testimony of other witnesses to suggest that Haser may have lacked the ability to understand the nature and scope of the extent of the business she was about to transact. Cameron testified that Haser's short-term memory fluctuated and when she administered a SLUMS exam to get a general idea of cognitive functioning, Haser's score indicated dementia and memory/cognitive impairment.

Cameron stated that though there was a possibility that Haser could understand a simple concept on a good day with lots of explanation and repetition, based on Cameron's training, education, and experience and to a reasonable degree of medical probability, Haser would not have been able to read and understand the power of attorney document. Dr. Albirini, who treated Haser at the hospital and nursing home, diagnosed Haser with dementia and, in February of 2010, filled out a statement of expert evaluation recommending a guardianship for Haser due to irreversible Alzheimer's dementia. Though Dr. Albirini did not see Haser on January 29th, he saw her before and after that date and stated that, throughout the time he saw her and to a reasonable degree of medical probability, she was not capable of signing legal documents because her judgment was impaired and she needed help with decision-making. Dr. Albirni testified that from the first time he saw Haser in January, she was not capable of making and understanding any decision that had any legal ramifications. Cooper testified that he never met or spoke with Haser with regards to her mental capacity or her desire to establish a power of attorney or a trust.

{¶28} Also in support of appellant's position is the fact that though Palmer and Rucker testified Haser was competent when she signed legal documents, neither knew what the legal documents were, both stepped out into the hallway when Haser signed the documents, and neither could recall the date on which they visited Haser when the documents were signed. Appellant further contends that, based on Hooks' affidavit, Haser thought she had plenty of money to pay for her long-term care at Autumn and thus Haser did not fully understand the power of attorney and trust documents were allegedly intended to facilitate extensive planning to qualify her for Medicaid.

{¶29} There is conflicting testimony as to Haser's mental state at the time she signed the power of attorney and trust documents and as to whether Haser fully understood the nature and scope of the extensive Medicaid planning and significant gifting she was about to transact with the power of attorney and trust documents. Accordingly, there are factual issues that require a trier of fact to weigh evidence and resolve issues of credibility. Thus, summary judgment is inappropriate. See *Cook v. Reising,* 181 Ohio App.3d 546, 2009-Ohio-1131, 910 N.E.2d 1 (9th Dist.). Construing the evidence in favor of appellant, we find that there are genuine issues of material fact as to whether Haser had the requisite mental capacity to execute the power of attorney and the trust documents. Appellant's first assignment of error is overruled, but appellant's fifth assignment of error is sustained.

## II. & VI.

{¶30} In his second assignment of error, appellant argues that the trial court erred in failing to declare the actions taken pursuant to the power of attorney and trust invalid due to the breach of the confidential and fiduciary relationship Murphy had with Haser. Alternatively, in his sixth assignment of error, appellant argues that there are genuine issues of material fact as to whether Murphy breached her confidential and fiduciary relationship with Haser and whether Haser ratified the acts of Murphy.

{¶31} "The holder of a power of attorney has a fiduciary relationship with his or her principal." *In re Scott*, 111 Ohio App.3d 273, 675 N.E.2d 1350 (6th Dist. 1996). A fiduciary relationship is "one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting portion of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis*, 66 Ohio St.2d 74, 419 N.E.2d

1094 (1981). A fiduciary owes the utmost loyalty and honesty to his principal. *Testa v. Roberts*, 44 Ohio App.3d 161, 542 N.E.2d 654 (6th Dist. 1988).

**{¶32}** Appellee argues summary judgment was appropriate because the power of attorney Haser gave to Murphy specifically allowed for self-gifting and self-dealing. When a gifting clause is present, the attorney-in-fact bears the initial burden of proving the validity of the transfer to themselves pursuant to the power of attorney, while the party attacking the transfer retains the ultimate burden of proving undue influence by clear and convincing evidence. *In re Estate of Buckner*, 12th Dist. Clermont No. CA2008-07-074, 2009-Ohio-2447. "In determining whether the initial transfer was valid, a court must first look to the express grant of authority in the language of the power of attorney. A court must then look to other considerations, based upon the unique facts of the case" that may include the following:

> (W)hether a transfer depleted assets necessary to maintain the principal's lifestyle; whether the principal knew of the gift and authorized it in some manner; whether the recipient of the transfer was the natural object of the principal's bounty and affection; whether the transfer was consistent with the principal's estate plan; whether the gift was a continuation of the principal's pattern of making gifts; and whether the transfer was made for another legitimate goal, such as the reduction of estate taxes.

*Id.* Further, "notwithstanding any express authority included in a power of attorney to make gifts to oneself and create trusts, a fiduciary remains subject to a standard of care * * * [and] continues to be bound by the overriding duty of loyalty to act for the benefit of

the principal and not for the benefit of himself." *Bacon v. Donnet*, 9th Dist. Summit No. 21201, 2003-Ohio-1301.

{¶33} Appellant argues that Cooper prepared the documents without having any communication with Haser, that Haser was told nothing about the power of attorney until Sorgen came to the nursing home with the documents prepared for execution, Haser never knew of the gifts to Murphy, and Murphy never knew of all the assets Haser had and failed to property investigate her assets. Further, that Haser knew she had sufficient assets to pay for her nursing home expenses and she intended to use those assets for that purpose and not for Medicaid planning, that no one discussed Medicaid planning with Haser, that such gifting was not part of a continuing pattern since she only gave Murphy small birthday and Christmas gifts, and since she had no will her only estate plan was placing Miller as beneficiary on various annuities. Appellant also argues Haser's assets were depleted due to the withdrawal penalties assessed due to Murphy's gifting and the attorney fees charged by Cooper.

{¶34} Appellee argues that, based upon the affidavit of Hooks, Haser wanted Murphy to be her attorney-in-fact and wanted Murphy to have her money when she died. Further, that Rucker testified that Haser knew what she wanted and there was nothing wrong with her mind. Also, that the power of attorney contains self-gifting provisions and was prepared by Cooper to protect Haser's assets from Medicaid seizure and that Murphy did not violate her fiduciary duty to Haser by protecting her assets from Medicaid seizure.

{¶35} We first note that, based upon our disposition of assignment of error VII, there is a genuine issue of material fact as to whether Murphy unduly influenced Haser

in the making of the power of attorney and trust documents. Thus, necessarily, there is a question of material fact as to whether the transfers were valid since, when a gifting clause is present, the party attacking the transfer retains the burden of proving undue influence.

{¶36} Further, we find the evidence submitted raises genuine issues of material fact regarding whether the transfers depleted assets necessary to maintain Haser's lifestyle, whether Haser knew of the gifts and authorized them, whether the transfer was consistent with Haser's estate plan, whether the gift was a continuation of Haser's pattern of making gifts, and whether the transfer was made for another legitimate goal, such as Medicaid qualification. Accordingly, there are genuine issues of material fact as to whether Murphy breached her duty to Haser. Appellant's second assignment of error is overruled. Appellant's sixth assignment of error is sustained.

### III. & VII.

{¶37} In his third assignment of error, appellant argues the trial court erred in failing to grant his motion for summary judgment because the power of attorney and trust were the product of Murphy's undue influence on Haser. Alternatively, appellant argues in his seventh assignment of error that genuine issues of material fact exist as to whether the power of attorney and trust were the product of Murphy's undue influence on Haser.

{¶38} A finding of undue influence requires the following: (1) a susceptible testator, (2) another's opportunity to exert influence on the testator, (3) improper influence exerted or attempted, and (4) a result showing the effect of such influence. *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania*, 69 Ohio St.3d 98, 630

N.E.2d 676 (1994). "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act * * *." *West v. Henry*, 173 Ohio St. 498, 184 N.E.2d 200 (1962). "Because the person who could give the best evidence is now deceased, most evidence will be circumstantial, leaving the factfinder to draw permissible inferences." *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania*, 69 Ohio St.3d 98, 630 N.E.2d 676 (1994).

{¶39} In support of his motion for summary judgment, appellee submitted the testimony of Sorgen that there was no indication Haser was unduly influence by Murphy when she signed the power of attorney, the testimony of Morningstar that she had no evidence that Haser was unduly influenced by Murphy when she signed the trust document, and the affidavit of Hooks, who stated that, in his opinion, Haser was not influenced by anyone.

{¶40} In his motion for summary judgment, appellant submitted evidence that the hospital social worker recommended a guardianship for Haser, that Haser was diagnosed with dementia during January and February of 2010, and that Dr. Albirini recommended a guardianship for Haser due to the irreversible condition of dementia and Alzheimer's in early February of 2010. Further, that when Ball, the hospital social worker, advised Murphy that Haser needed a guardian, Murphy made an appointment with Cooper to obtain a power-of-attorney without informing him that Ball told Murphy Haser needed a guardian and failed to inform Cooper that other relatives of Haser's existed. In addition, appellant argued that Murphy actually exerted her influence by having Haser sign the power of attorney which allowed gifting and self-dealing and such gifting of the significant sum to Murphy was a change from what Haser had previously

done as she previously made modest gifts to her church, the Eagles, and to Murphy on holidays and birthdays. Appellant also argued that Haser had no understanding that Murphy was reallocating funds to herself through "Medicaid planning" as Hooks stated in his affidavit that she had "lots of money and could afford to live comfortably at Autumn Health Care until her long term care ended."

{¶41} Construing the allegations most favorably towards appellant, we find that reasonable minds could draw different conclusions from the undisputed facts as to whether the power of attorney and/or trust documents were the product of undue influence upon Haser by Murphy. Accordingly, appellant's third assignment of error is overruled, but appellant's seventh assignment of error is sustained.

IV.

{¶42} Appellant argues the trial court erred when it denied his motion to join Murphy's children as parties to the lawsuit. We agree.

{¶43} Civil Rule 19 states, in relevant part, as follows:

A person who is subject to service of process shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest

relating to the subject of the action as an assignor, assignee, subroger, or subrogee * * *.

**{¶44}** Likewise, R.C. 2721.12 provides that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration."

**{¶45}** Civil Rule 19 "encourages, and Ohio decisional law favors, a policy of liberally granting joinder." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298 (1984). In addressing motions pursuant to Civil Rule 19(A), a trial court is vested with discretion in determining whether a party is necessary for a just adjudication. *Id.* In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶46}** We concur with appellant that Murphy's children are indispensible parties. Murphy invested $480,000 of the $580,000 she gifted to herself into an annuity. Her children are the beneficiaries of this annuity. Murphy died on January 19, 2013 and, after a suggestion of death was filed on February 20, 2013, Miller timely sought to join Murphy's children pursuant to Civil Rule 19. Murphy's children, as beneficiaries of the annuity with a significant portion of the gifted funds in it that appellant seeks to declare invalid, claim an "interest relating to the subject of the action" and "are so situated that the disposition of the action in their absence may * * * as a practicable matter impair or impede their ability to protect that interest." Further, if Murphy's estate does not have sufficient assets to potentially satisfy a finding in Miller's favor on his claims for

$300,537.92 plus interest, punitive damages, costs, and attorney fees, then in the children's absence, complete relief cannot be accorded among those already parties. Accordingly, we find the trial court erred in denying appellant's motion to join Murphy's children as parties to the action. Appellant's fourth assignment of error is sustained.

{¶47} Based upon the foregoing, appellant's first, second, and third assignments of error are overruled and appellant's fourth, fifth, sixth, and seventh assignments of error are sustained. The April 25, 2014 and July 3, 2013 judgment entries of the Muskingum County Court of Common Pleas are reversed and we remand the matter to the trial court for further proceedings in accordance with the law and this opinion.

By Gwin, J.,

Hoffman, P.J., and

Farmer, J., concur